*In re* Interest of RICHARD BLAKES, a minor.

(No. 71-25;

Third District—April 6, 1972.

Bruce Stratton, of Defender Project, of Ottawa, for appellant.

Robert S. Calkins, State's Attorney, of Peoria, (Roland N. Litterst, Assistant State's Attorney, of counsel,) for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

On November 17, 1970, Richard Blakes, 13, was found to be a delinquent following a hearing on a complaint signed by an officer of the Juvenile Division of the Peoria Police Department, which complaint charged theft of a bag of potato chips. On November 24, 1970, a dispositional hearing was held and the minor was held and the minor was committed to the Department of Corrections, which agency ultimately placed Richard in the Illinois State Training School for Boys at St. Charles.

On December 8, 1969, a verified petition was filed by the School Social Worker of the Peoria Public Schools requesting that Richard Blakes, his sister and two brothers, be declared minors in need of supervision.

It was alleged that; Richard had been present one-half day during the current school year; his sister Shilley was present three days (left early two of those three days); his brother Robert was present 32 days out of 59; and his brother Bobby was present 30 days out of 59. On February 24, 1970, after a hearing, the petition was amended to be a dependency petition and the court found the minors to be dependents as being without proper parental care and supervision. The court ordered that Richard be taken from the custody of his parents and was placed under the care of Richard S. Laymon, Guardianship Administrator, Department of Children and Family Services, who was appointed Guardian with power to place.

The delinquency complaint was filed June 30, 1970, the cause was continued generally on July 7 because Richard could not be found. Richard was thereafter found and ordered detained but fled the custody of Frank Knoll of the Juvenile Court Services on September 9 and on September 15, 1970, the case was continued generally. Eventually Richard was found, after being at large at least a month, and was adjudicated a delinquent. No claim of error has been made as to the propriety of the adjudicatory proceedings.

At the dispositional hearing held before the Juvenile Court Judge there were present: (1) Richard Blakes, (2) his lawyer, (3) Tony Arciero, the case worker who handled Richard Blakes as a ward of the Dept. of Children and Family Services, (4) Frank Knoll of the Peoria County Department of Juvenile Court Services, and (5) Harold J. Frobish, Assistant State's Attorney.

Tony Arciero presented a 15 page written social history report to both lawyers and to the court. The court examined the report in open court without objection. The report was never formally offered into evidence but is attached to a Stipulated Statement of Facts which was made a part of the record.

Frank Knoll advised the court that his Department had no facility in which to place Richard.

Tony Arciero suggested that Brown's School for Boys (of Texas) might take Richard, that he had not pursued the possibility because his superior felt that the financial expense was prohibitive. The court directed Frank Knoll to call immediately to determine the cost. While Frank Knoll was making the call Richard suggested that he be returned to his parents but the court said this was not possible. Frank Knoll returned to the courtroom and advised the court that Brown's School would consider accepting Richard but the cost would be in excess of $950.00 per month. The court felt that the financial level was unacceptable and committed Richard to the Department of Corrections.

The social history report was prepared Nov. 23, 1970. On that date the father's whereabouts were unknown and the mother was in quarantine at the T.B. Sanatorium. The whereabouts of a brother John, aged 17 were unknown and the sister Shillie, aged 15½ was unknown. Two younger brothers were in the Meridell Home for Boys, Texas, a younger sister was in a foster home in Peoria. The report showed a complete inability on the part of the mother to function as a responsible parent and total desertion of the family by the father.

The report concludes, "It is obvious from Richard's family history he is an unfortunate victim of circumstances and society—his values, goals, desires, needs, and wants were distorted and heavily influenced by his home and total living environment. His motives for theft and other related crimes can be associated with the basic needs of every human being—that is, food and clothing. Richard had no home to go to and thereby lived as best as he could—by any means he knew of. He had no image to follow in terms of society's proper values as standards. Theoretically, Richard, in this worker's opinion, cannot be held responsible for his actions and behavior. Technically, Richard may be termed a menace to society and for the well being of the public, Richard should be committed to an institution. Again, unfortunately, there is no available institution to attempt to rehabilitate Richard, mainly due to his nature of running away. Various institutions have been contacted as to the placement of Richard, but due to his history, he is not acceptable".

❖　❖　❖

■■ Appellants first contend that it was a denial of equal protection to submit the juvenile to a possibility of eight years of imprisonment for the theft of a bag of potato chips.[1]

This same argument was raised and rejected in *In re Presley*, 47 Ill.2d 50, 264 N.E.2d 177 and in *In re Elvira Sekeres*, 48 Ill.2d 431, 270 N.E.2d 7. Appellant cites: *Kent v. United States*, 383 U.S. 541, 10 L.Ed.2d 84; *In re Gault*, 387 U.S. 1, 18 L.Ed.2d 527; and *In re Urbasek*, 38 Ill.2d 535. In *Kent*, the Supreme Court declared that before the juvenile court can waive its exclusive jurisdiction over a juvenile in order to permit him

---

[1] During oral argument we requested a supplemental record which when supplied stated:

1. On Dec. 11, 1971 Richard was released on parole to the Family and Youth Counsellor, Department of Corrections at Peoria, Ill.

2. On recommendation of the psychiatrist at St. Charles, a provisional placement was made with his mother on condition that she seek adequate housing, she keep Richard under medical supervision and administer certain necessary medication and that she see that Richard was enrolled and remain in a special education class in school. She agreed to all conditions.

3. By Jan. 21, 1972 Mrs. Blakes had not met one of the conditions and alternative placement was being sought.

to be criminally prosecuted, it must accord him a hearing which "must measure up to the essentials of due process and fair treatment". In *Gault* the court held that in an *adjudicatory hearing* the essentials of due process include adequate notice of the charge, the right to counsel, the privilege against self-incrimination and the right to confrontation and cross-examination of witnesses. The Court expressly made its rulings applicable only to the adjudicatory stage of juvenile proceedings. In *Urbasek* our Supreme Court held that the quantity of proof necessary to validate a finding of delinquency was the "reasonable doubt" standard. The court said, "The unique benefits that are derived from the special dispositional processes under the Act will not be diluted by the changes made here at the adjudicatory stage".

In *McKeiver v. Pennsylvania*, (U.S.), 29 L.Ed.2d 647, wherein the court refused to extend the right of trial by jury to juvenile delinquency proceedings, on page 665 the court said, "A typical disposition in the juvenile court where delinquency is established may authorize confinement until age 21, but it will last no longer and within that period will last only so long as his behavior demonstrates that he remains an unacceptable risk if he returns to his family. *Nor is authorization for custody until 21 any measure of the seriousness of the particular act which the juvenile has performed.*" (Emphasis supplied)

■■ The next contention is that the Juvenile Court's committal of the minor to the Department of corrections was based upon an inadequate dispositional hearing.

Ch. 37 of the Ill. Rev. Stat. par. 705—1 provides in substance that, (1) after adjudging the minor a ward of the court, the court shall hear evidence of the proper disposition best serving the interests of the minor and the public. *All evidence helpful in determining this question, including oral and written reports, may be admitted and relied on to the extent of its probative value,* even though not competent for the purpose of the adjudicatory hearing, (2) before making an order for disposition the court shall advise \* \* \* of the factural contents and the conclusion of the reports prepared for the use of the court, and considered by it and afford fair opportunity, *if requested,* to controvert them.

The principal argument is devoted to the fact that a list of 42 complaints of a criminal nature was presented to the judge as part of the social history and that he must have been influenced by it.

Appellant cites, in support of his claim, *People v. Crews,* 38 Ill.2d 331, 231 N.E.2d, 451 which concerned the conduct of a hearing in aggravation and mitigation under the Criminal Code. His reliance is misplaced— he had no hearing in aggravation and mitigation. He had a dispositional hearing as provided by statute.

It must also be remembered that there was no objection by appellant's lawyer. "The statute gives the juvenile court judge a great deal of discretion regarding the conduct of a dispositional hearing. This is as it should be. Under the stated facts of this case, we can find no evidence that the lower court abused its discretion to any degree even approaching prejudicial, reversible error". *People v. Perry* (Ill.App.2d), 270 N.E.2d 272.

■■ The last contention of appellant is that he was denied due process of law when (a) he was incarcerated because of his parents neglect and (b) the court's refusal to pay for a proper care facility. The first is a specious argument which has no basis in law. Richard was incarcerated because he was delinquent, was a runaway, and because guidance was impossible without confinement. In refusing to authorize placement in Brown's School for Boys at $950.00 or more per month the court was exercising its discretion in "serving the interests of the minor, *and the public*". We are unable to say that the court abused its discretion in so refusing.

■■ To sum up—the arguments advanced here seek to equate a juvenile delinquent's dispositional hearing with a criminal trial. Whether they should be so equated is the real issue here. "Concern about the inapplicability of exclusionary and other rules of evidence, about the juvenile court judge's possible awareness of the juvenile's prior record and about the contents of the social file; * * * chooses to ignore, it seems to us, every aspect of fairness, of concern, of sympathy and of paternal attention that the juvenile court system contemplates. If the formalities of the criminal process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it." *McKeiver v. Pennsylvania, supra.*

Judgment affirmed.

STOUDER, P. J., and SCOTT, J., concur.