*In re* DARYL WEALER, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* DARYL WEALER, Respondent-Appellant.)

Third District   No. 76-41

Opinion filed September 29, 1976.

O. B. Pace, Jr., of Lacon (Michael P. McCuskey, of counsel), for appellant.

Robert A. Barnes, Jr., State's Attorney, of Lacon, for the People.

PER CURIAM:

This is an appeal from an order of the Circuit Court of Marshall County committing respondent Daryl Wealer to the Juvenile Division of the Illinois Department of Corrections, as a result of a dispositional hearing. The State's Attorney of Marshall County had petitioned to have Daryl Wealer adjudged delinquent and a ward of the court. The allegations of the petition were not disputed. On appeal the appellant contends that the trial judge's dispositional order was against the manifest weight of the evidence for the reason that there was no substantial evidence in the record as a whole to establish, that the parents of the minor were unfit or unable for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or were unwilling to do so, and that it was in the best interests of the minor to take her from the custody of her parents. It is contended that such findings are mandatory before the trial court can exercise its special statutory jurisdiction in committing a minor to the Department of Corrections.

It appears from the record that on September 8, 1975, respondent Daryl

Wealer and one Lori Maubach burglarized a pharmacy in Henry, Illinois. Several thousand pills, including valium, phenobarbital, amytal and dexedrine were taken from the pharmacy. It was shown that the respondent and her companion intended to sell the stolen drugs in Peoria, Illinois.

Appellant and her parents testified at the dispositional hearing. The father, Victor A. Wealer, has been blind for 14 years. Mr. Wealer is employed as a telephone salesman of tools in Chicago, Illinois. He resides in Stone Park, Illinois, during the work week, and returns to the family residence in Putnam County on weekends and holidays. Appellant's younger sister, Debra, suffers from encephalitis. Debra is comatose and incontinent and requires constant care. Appellant's mother and appellant provide Debra with the care necessitated by her condition. Appellant's family has resided in Putnam County for three years. The family moved to Putnam County from Lombard, Illinois, in an effort to get away from the problems of city life. The father said Daryl needed to change schools because her peer group was to blame for her troubles.

It is shown by the record that appellant never committed an unlawful act of the nature involved in this case previously. Her prior disciplinary problems included incidents in school. She is 16 years of age. In the past, appellant's parents have been notified that she was skipping class, misbehaving and being sassy at school. Appellant's attitude and grades at school have improved during this year. Her parents have not been notified of any problems with appellant at school this year. Appellant's other disciplinary problems have been an unauthorized truck ride to visit a friend in Lombard, and (two years ago) the smoking of marijuana. Appellant, her father and mother, all testified that they would abide by any terms of the probation order.

It was also shown that after the delinquency petition was filed in this case, appellant was stopped by a Marshall County sheriff's deputy for illegal transportation of liquor consisting of a six-pack of beer which Daryl had purchased through another person. She stated she had intended to drink the beer with four other people. The incident occurred about 10 or 10:30 p.m. on a Friday night when Daryl was staying overnight at a friend's house. Because the deputy knew appellant's brother (who is also a deputy sheriff in Putnam County) no charges were filed against appellant.

The sole issue involved in this case on appeal is whether the trial court's order committing appellant to the Juvenile Division of the Department of Corrections was proper on the record made in the trial court.

We should observe, preliminarily, that a dispositional order must be reviewed in light of the purposes and policies of the Juvenile Court Act. As stated in the Act (Ill. Rev. Stat. 1975, ch. 37, par. 7601—2(1)):

"The purpose of this Act is to secure for each minor subject

hereto such care and guidance, preferably in his own home, as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when his welfare or safety or the protection of the public cannot be adequately safe-guarded without removal; and, when the minor is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should be given by his parents * * *."

The policies announced in the Juvenile Court Act are given specific support in the dispositional scheme of the Act. The relevant orders of disposition which may be entered with respect to an adjudicated delinquent are (a) placement of the minor on probation or conditional discharge and release of the minor to his parents, (b) placement of the minor under section 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—7) with a relative or other person, a probation officer, an agency other than the Department of Corrections, a licensed training or industrial school, or any other appropriate institution, with or without placing the minor on probation or conditional discharge, and (c) commitment of a minor to the Department of Corrections under section 5—10 of the Juvenile Court Act, or under section 5—2. Any disposition removing the minor from the custody of his parents must be supported by a finding that, generally, the parents are unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor (Juvenile Court Act, sections 5—7, 5—10 (Ill. Rev. Stat. 1975, ch. 37, pars. 705—7, 705—10)). Commitment of the Minor to the Department of Corrections must be supported by the further finding that the best interest of the minor and the public will be served by placement.

We are, therefore, confronted with the question in this case of whether the mandated findings of the Juvenile Court Act are supported by the record in the trial court. Appellant attacks the dispositional order as being against the manifest weight of the evidence and as not being supported by substantial evidence on the record. Appellant argues that the good intentions of appellant's parents, as noted by the trial court, demonstrate that the requisite findings cannot be made. The State argues, however, that although Daryl's parents are trying to rear her in the best possible manner, the parents' efforts are simply not successful and the parents are thus unable to adequately discipline their daughter. The State emphasizes that Mr. Wealer's blindness and routine absences from the family residence and the amount of Mrs. Wealer's time devoted to the care of the Wealer's invalid daughter, Debra, render the Wealers unable to give

Daryl the proper supervision. The State does not suggest that the Wealers are unfit or unwilling to care for Daryl. The circumstance that Mr. Wealer is blind should make no difference under the facts in this case.

The trial court did in fact find that the Wealers were unable to discipline Daryl. This finding should be tested on review by the manifest weight of the evidence standard. (*People v. Hackman* (1971), 1 Ill. App. 3d 1030, 1033, 275 N.E.2d 488.) The Juvenile Court Act does require, in addition to a finding of the parents' inability, consideration of the source of the parents' inability. It is apparent from the Act that if the inability arises solely from other than financial circumstances alone then the parents can be deprived of the custody of the minor child. If, after completely disregarding financial causes of the parents' inability, other existing nonfinancial causes of the parents' inability are sufficient to render the parents unable to discipline the minor, the statute would authorize taking custody of the child from the parents and placing the child in the Department of Corrections. Obviously, if existing nonfinancial circumstances, taken alone, are not sufficient to render the parents unable to discipline the minor, and if financial circumstances taken alone would be sufficient to render the parents unable to discipline the child, the statute would not authorize taking the child from the parents' custody. The apparent literal meaning of the statute in the use of the phrase "financial circumstances alone" would clearly indicate the general statutory reluctance to deprive parents of custody of their children.

The major factors that were determined by the court below to render the Wealers unable to discipline Daryl were the father's blindness, the father's work-related absence from the family residence, and the mother's care of the invalid daughter. The father's blindness obviously is a factor of nonfinancial nature. The daughter's illness in itself is not a financial factor. However, it is not clear whether the infusion of some reasonable amount of financial support to this family would allow the hiring of persons to aid nursing the invalid daughter. The father's blindness, taken alone, obviously cannot support a finding that the Wealers are unable to discipline their daughter.

The second finding required to commit a minor to the Department of Corrections is that the best interest of the minor and the public will be served by placement under section 5—10 of the Juvenile Court Act. Ill. Rev. Stat. 1975, ch. 37, par. 705—10. The State argues that Daryl's best interests are not presently being served and that, therefore, Daryl's best interests would be served by commitment to the Department of Corrections. The State justifies this argument by the assertion that the trial judge found that the alternate dispositions are inappropriate for this case. The State apparently refers to the portion of the trial court's order at the dispositional hearing where the court stated "we surely don't have the

facilities here in a small county, such as Marshall County" to properly supervise. The court also observed, "It would seem to me that this young lady needs some discipline, that she needs the help of an agency that has the proper personnel and facilities to carry out and help her solve her problems. For that reason, I believe, under all the circumstances, as I felt in connection with her companion, Miss Maubach, that this minor should be committed to the Juvenile Division of the Department of Corrections for their handling of the case, confinement, supervision as is their policy." Appellant contends that this statement must be considered in light of the State's recommendation that Daryl be committed to the Department of Corrections so that the Department "* * * can readily evaluate the child and may, themselves, make a determination as to whether or not she should be returned back to the family home." Appellant argues, in effect that the trial court thus delegated to the Department of Corrections a decision which the Juvenile Court Act requires be made by the trial court.

In the case of *In re Blakes* (1972), 4 Ill. App. 3d 567, the trial court was faced with the possibility of committing a minor to the Department of Corrections. In seeking to pursue the directions of section 5—7 of the Juvenile Court Act as to placing alternatives, the trial court in that case directed the caseworker to contact the Boys' School in Texas to find the terms and costs of placement of a minor with the Texas Boys' School. The cost of such placement was deemed prohibitive and the minor was committed to the Department of Corrections. The case illustrates, however, an active concern and involvement in the placement of the minor which appellant contends is not apparent in the trial court in this case, since an inquiry could be made to the more populous neighboring communities as to means of helping the minor, short of commitment to the Department of Corrections.

From the record in this case it appears that Daryl's brother is a Putnam County deputy sheriff, a person who must be assumed to be reputable and capable of supervising a wrongdoing minor, but, so far as the record is concerned, apparently no inquiry was made by the parties or counsel or the trial court to determine whether such person was actually willing or able to take custody of the minor as an alternative to commitment.

Among other things considered by the trial court was the attitude of Daryl. Daryl's attitude does relate to both the inability of Daryl's parents apparently to control Daryl and the community and the best interests of Daryl with respect to commitment to the Department of Corrections. There is a showing that Daryl apparently shows no remorse for her actions. Daryl testified that she committed the burglary on a dare and not for any profit. She admitted that breaking into the store was wrong. The trial court indicated that had this been a case of burglary alone it would have considered the matter of disposition entirely differently. The trial

court, however, stated that the trial court was dealing here with "not just a burglary but with the intent to be a drug pusher. This is the worst type of individual on the face of the earth as far as I am concerned." Appellant contends that the trial court's attitude, as exemplified in this statement, does not comply with the mandate of the Juvenile Court Act that it be administered "in a spirit of humane concern, not only for the rights of the parties, but also for the fears and the limits of understanding of all who appear before the court." Ill. Rev. Stat. 1975, ch. 37, par. 701—2(2).

It is difficult to conclude from the record that Daryl's attitude is typical of that of a drug pusher. While she did testify that she did not think it was wrong to have the drugs and that the burglary and sale of the drugs would have been all right if she had gotten away with it, she did testify that it would be wrong to "turn someone into a vegetable" with drugs. It appears, therefore, that Daryl thought it was all right to have drugs and the drugs could be used if it was possible to use them without harm to the user. The attitude, of course, would not justify Daryl's actions. Daryl's attitude shows that she apparently does not understand the law. It also shows that she lacks malice, which appellant contends was assumed by the trial court.

The trial court also found that Daryl had a bad attitude when she told "half-truths" to the court. This was related to the question of illegal transportation of the six-pack of beer. We do not conclude from this that Daryl was telling half-truths in answering questions precisely related to other conclusions, when she stated she had never previously commited an unlawful act of the type involved in this case.

It appears from the record, in view of the unusual circumstances in this case, that the record of only one offense by the appellant and a failure to show unfitness of the parents for reason other than financial circumstances, to care for and discipline Daryl, should not result in a disposition to commitment to the Department of Corrections, rather than probation. Consideration of alternative dispositions appears to have been founded, in part, upon the fact that the disposition was made in a small county. In view of such conclusions, we believe that the best interests of Daryl and of the public require that there be a new dispositional hearing, with consideration of all relevant factors, notably the effect of financial circumstances on the parents' ability, and consideration of available alternative dispositions, before making a final determination in this case.

For the reasons stated, therefore, this cause is remanded to the trial court for a new dispositional hearing in the best interests of Daryl and the public.

Remanded for a new dispositional hearing.