In re JOHN ANTOSZ, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. JOHN ANTOSZ, Respondent-Appellant.)

First District (5th Division)  No. 78-61

Opinion filed August 11, 1978.

James J. Doherty, Public Defender, of Chicago (Michael McInerney and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Suzanne Philbrick, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

The minor respondent, John Antosz, was charged in a delinquency petition with the offense of burglary. (Ill. Rev. Stat. 1975, ch. 38, par. 19—1.) Pursuant to an admission, respondent was found delinquent, adjudicated a ward of the court, and committed to the Department of Corrections, Juvenile Division. The sole issue presented on review is whether the court erred in committing respondent to the Department of Corrections. We affirm. The pertinent facts follow.

Respondent was charged with the burglary of the apartment of Steven Wallace. Throughout the proceedings he was represented by the public defender. At the adjudicatory hearing on April 6, 1977, respondent requested to enter an admission to the charge. After fully advising him of his constitutional rights and of the consequences of entering an admission, and then proceeding to find a factual basis for the admission, the trial court found respondent delinquent and adjudged him a ward of the court. The case was then continued until April 26, 1977, for presentation of a social investigation and a full dispositional hearing.

At the dispositional hearing the court was informed that in addition to the instant case, two other petitions concerning respondent were pending before the court. Both petitions alleged that respondent had committed the offense of burglary; one on April 18, 1977, and the other on February 15, 1977.

A written social investigation was submitted by Probation Officer Boehm, received by the court, and made part of the record. The social investigation revealed that respondent was an unemployed, 16-year-old

high school dropout, making his third appearance before the juvenile court. He had appeared on August 9, 1974, on a theft petition and received six months supervision, which was terminated satisfactorily. The second appearance was on a neglect petition which was dismissed for want of prosecution. In addition, respondent had had two station adjustments; one in 1973 involving an attempt theft, and the other in 1974 involving a theft.

Respondent readily admitted to Boehm during his interview that he had participated in the instant burglary, but he blamed his accomplices, stating that the burglary was their idea and he just went along with them. However, Boehm knew from speaking with the other boys involved in the burglary that respondent was equally guilty, and that he also was one of the originators in the burglary. Boehm could not determine whether respondent was remorseful to any degree.

The report also stated that respondent was looking for a job; however, Boehm was not impressed that "this is what he desires in life." Furthermore, he associated with boys who were known by Boehm to be burglars, and he would be appearing before the court again if he continued to associate with them. Respondent did not seem concerned with his ability to avoid trouble, and had no plans for his future.

Concerning his family background Boehm reported respondent was the third of seven children born to his mother. His parents had five children and were divorced in 1966. His father subsequently died in 1968. In 1971 his mother married her present husband and two more children were born.

It seems that the older children in the family were having difficulties getting along with their stepfather, who was attempting to use strict methods to control them. There is friction at home because the mother defends her boys against the stepfather. Respondent has a good relationship with his mother and the other children; however, he resents his stepfather's presence in the home. It is apparently this resentment that is causing him to act the way he has.

The report concluded that respondent's attitude was good, and "it seems that perhaps this boy has learned his lesson." A lengthy period of probation was recommended, along with a plan to get respondent a job or get him back into school.

Boehm also testified at the hearing that respondent had been sent away from Prosser High School and they refused to take him back. Boehm stated that respondent had indicated he was willing to go to summer school and that he (Boehm) could get respondent a summer job with the MCY program.

Defense counsel stated to the court that the source of respondent's trouble was that he had too much time on his hands. Respondent had

been refused entrance to both Prosser and Foreman High Schools because of a supposedly bad record in grammar school. So for two years, since leaving grammar school, respondent had basically been idle.

Counsel also informed the court that respondent's mother had stated that she had no problems disciplining him. Respondent was around the house quite a bit, watched the younger children, and did work around the house. Respondent had also informed his counsel that he had made applications for various jobs, without success. He was willing to go to any school that would accept him since he was aware that without an education he would not be able to find a good job.

Defense counsel recommended a period of probation for respondent so that he could work with a probation officer, attend school, and perhaps find a job. The prosecutor joined in this recommendation but asked that the period of probation be at least two years.

Respondent's mother then addressed the court, stating that she felt her son deserves a chance and that she had "done everything that I can." She felt that perhaps respondent's companions were a bad influence on him, but that basically her son listened to her.

Respondent also addressed the court, stating that if the probation officer could find him a job, he could keep it.

The court then made the following statement:

> "Based upon the totality of the evidence and information presented and after fully considering the positions and recommendation of the parties I find as follows: I find a disposition of probation in the case at bar to be inappropriate. I find it would deprecate the seriousness of the minor respondent's misconduct, and would be inconsistent with the ends of justice. I also find the minor respondent is beyond the control and discipline of his parents and guardian and that it is in his best interests and the best interests of the community at large that he be committed to the Department of Corrections, Juvenile Division, and that will be the order."

It is from this order that respondent appeals.

OPINION

Respondent contends that the trial court erred in committing him to the Department of Corrections. He argues that the court's determination to commit him was (1) against the manifest weight of the evidence, and (2) based on an improper adult sentencing standard. We disagree.

■■ Section 5—10 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—10) provides, in pertinent part, as follows:

> "(1) When any delinquent has been adjudged a ward of the court under this Act, the court may commit him to the Department of

Corrections if it finds that (a) his parents, guardian or legal custodian are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and (b) the best interests of the minor and the public will not be served by placement under Section 5—7."

In this case, as conceded by respondent, the court made the requisite findings prior to committing him. Upon reviewing the entire record, we cannot conclude that the court abused its discretion (see *In re Wilson* (1976), 40 Ill. App. 3d 619, 352 N.E.2d 251) or erred as against the manifest weight of the evidence (see *In re Wealer* (1976), 42 Ill. App. 3d 479, 355 N.E.2d 187) in so doing.

Respondent places great emphasis upon the following facts: (1) there was some attempt at discipline in his house; (2) he stated that he would keep the job that Probation Officer Boehm promised to get for him; and (3) both parties, as well as Officer Boehm, recommended a period of probation. We are not persuaded. Section 5—2 of the Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—2) sets forth the various dispositional alternatives available to the court, including probation and commitment to the Department of Corrections, without deferring one to another. (*In re Wilson.*) The trial court may choose, as it sees fit, among the various alternatives, and need not defer to any particular disposition. In this case the record clearly reflects that the court considered all the evidence, including the recommendations of probation. However, the court was not bound by these recommendations, and we cannot say that it was an abuse of discretion to reject them and order respondent's commitment instead.

The record reveals that respondent was referred to the juvenile court on three other occasions; once for theft in 1974, in addition to two burglary petitions which were then pending before the court. One of the pending petitions alleged that respondent had committed a burglary on April 18, 1977, which date was subsequent to the adjudicatory hearing in the instant case. Respondent had also had two station adjustments for theft and attempt theft.

Despite respondent's statement that he would keep any employment that could be found for him, the social investigation reflected that the probation officer was not impressed by respondent's desire to work. Rather, the report reflected that respondent associated almost exclusively with known burglars and that he was not particularly concerned about staying out of trouble. Furthermore, while he had a good rapport with his mother, it appeared that she was too permissive. She was aware that respondent had been in trouble before with the law, yet she had obviously been unable to control such behavior on his part. While the stepfather was attempting to discipline respondent, the report concluded

that this was ineffective. Indeed, this stricter discipline, as well as the stepfather's presence in the house, caused a resentment in respondent which apparently spurred on his delinquent behavior. In light of these facts we cannot say that the court erred in ordering commitment. See *In re Wilson.*

■■ Respondent also complains that the order of commitment was improper because it was based on an adult sentencing standard. The record reflects that in rejecting the recommendations of probation in favor of commitment, the court stated that probation would "deprecate the seriousness of the minor respondent's misconduct, and would be inconsistent with the ends of justice." This language appears in section 5—6—1(a)(3) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1(a)(3)) and refers to a standard to be used when a trial court sentences an adult offender to imprisonment as opposed to probation or conditional discharge.[1] While no such language appears in the Juvenile Court Act, we cannot conclude that its use in this case constitutes reversible error.

This court recently considered this exact same issue in *In re Buchanan* (Docket No. 77-947, filed July 18, 1978, First District, Second Division), 62 Ill. App. 3d 463, 379 N.E.2d 122. In *Buchanan* the court concluded that:

> "Although this language may be inappropriate to juvenile proceedings, it is apparent that the trial court did employ the proper standards and carefully considered alternative dispositions. But it decided that commitment was preferred because the respondent was beyond the discipline and control of his mother, and commitment would serve his best interests and the community's best interests. We find no reversible error has been committed."

A similar conclusion is appropriate in the instant case. The court clearly concluded that respondent was beyond his parents' control and that the best interests of all concerned would be served by commitment. These are the only requisites necessary to entering a commitment order. See Ill. Rev. Stat. 1975, ch. 37, par. 705—10.

Furthermore, we note that the sentiments expressed in the complained-of language are not entirely inappropriate to the considerations of juvenile justice. The Act sets forth as part of its purpose to secure such care and guidance "as will serve the moral, emotional, mental, and physical welfare of the minor * * *." (Ill. Rev. Stat. 1975, ch. 37, par. 701—2.) Thus, the court, in attempting to insure that respondent was made aware of the seriousness of his antisocial behavior, is in our view attempting to serve the moral welfare of this minor. The welfare of the

---

[1] This section has recently been amended by Public Act 80-1099, §3, effective Feb. 1, 1978, and this language now appears in section 5—6—1(a)(2) of the Unified Code of Corrections. Ill. Rev. Stat. 1977 Supp., ch. 38, par. 1005—6—1(a)(2).

minor, as well as the best interests of the community, are the "ends of justice" insofar as the Juvenile Court Act is concerned. Thus, while perhaps expressed in somewhat inappropriate language, we conclude that the reasoning underlying the court's expressed rejection of the probation recommendations was entirely consistent with the Act. We find no error in this regard.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.