STATE OF NEW JERSEY IN THE INTEREST OF C.P. & R.D., JUVENILE DEFENDANTS.

Superior Court of New Jersey
Chancery Division Family Part
Passaic County

Decided July 11, 1986.

*Leon Consales* for State of New Jersey.

*Gregory Aprile* for juvenile-defendant C.P.

*Caridad Rigo* for juvenile-defendant R.D.

FERRANTE, P.J.S.C./F.P.

This matter is before the court on juvenile co-defendants' motions seeking dismissal of complaints and presently pending against them. The complaints allege that the two juvenile co-defendants C.P. and R.D. physically restrained the victim, pinning her to the ground, while they inserted their fingers into her vagina. The juveniles were charged with aggravated sexual assault, under *N.J.S.A.* 2C:14–2(a)(1) and –2(a)(5). These motions seek to dismiss those charges; the arguments proffered by counsel in the matter revolve around the young ages of the juvenile co-defendants. At the outset, the court finds that at the time of the alleged assault, the victim, E.Z., was six years old, juvenile co-defendant C.P. was six years old and juvenile co-defendant R.D. was nine years old. The ages of these young people, while not determinative of the court's decision, are viewed by the court as a tragic circumstance; nonetheless, and without minimizing the tragic consequences this incident has had on the lives of the juveniles involved, and particularly on that of the victim, the court grants the motions to dismiss the charges against both juvenile co-defendants C.P. and R.D.

(A third juvenile, N.J., aged seven, was originally charged, under a complaint similar to those pending here, for his involvement in this incident. On motion of the State and N.J.'s attorney, the court dismissed that complaint on May 20, 1986. However, prior to granting the motion, the State obtained an

examination of N.J. by psychiatrist Dr. Frank Riccioli. The prosecutor did not seek to have either of the two remaining defendants undergo an examination by Dr. Riccioli or any other expert on its behalf. The defense had juvenile defendant, N.J., examined by Dr. Louis B. Schlesinger. Dr. Riccioli found that N.J. had the ability to relate the events of the incident to the best of his recollection, and a basic understanding of right and wrong. He also found, however, that juvenile defendant N.J.'s knowledge of adult sexual behavior was non-existent, and that he had no knowledge of the purpose or function of the anatomical differences between the sexes. Dr. Schlesinger's expert findings were substantially the same. Based on this evidence, that juvenile defendant N.J. had no understanding of the essentially sexual nature of the conduct attributed to him, the court reasoned that N.J. could not have formed the mental state necessary to commit the crime charged. As a result of said reports and the motions of the State and defense counsel, the court dismissed the complaint.)

The issue presented in this matter is one of first impression to the courts of this State. The question is whether juvenile defendants six and nine years of age can be held to trial in juvenile court on the serious charge of aggravated sexual assault. The court recognizes the seriousness of these proceedings and has concern for the alleged victim and the alleged juvenile co-defendants. The court bears in mind the specific interests of the juveniles involved, the integrity of the families of which they are a part, as well as the interests of the State and of public safety. *N.J.S.A.* 2A:4A–21. In considering carefully the balance of these four interests in this serious matter, it would be well to review briefly the historical development of juvenile justice in New Jersey.

Under common law principles, it was generally held that the age of a juvenile was dispositive on the issue of his/her capacity to commit a crime. As the Supreme Court stated in *Allen v. United States*, 150 *U.S.* 551, 14 *S.Ct.* 196, 37 *L.Ed.* 1179 (1983):

The rule of the common law was that one under the age of seven years could not be guilty of felony or punished for any capital offence, for within that age the infant was conclusively presumed to be incapable of committing the crime; and that while between the ages of seven and fourteen the same presumption obtained, it was only *prima facie*, and rebuttable. The maxim—malice supplies the want of maturity of years—was then applied and, upon satisfactory evidence of capacity, the child within these ages might be punished; but no presumption existed in favor of the accused when above fourteen. [14 *S.Ct.* at 198]

Early decisions of the courts of this state reflect this common law principle. *State v. Aaron*, 4 *N.J.L.* 231 (Sup.Ct.1818); *State v. Guild*, 10 *N.J.L.* 163 (Sup.Ct.1828). Nontheless, the latter half of the 19th and early years of the 20th Centuries saw a change in attitude towards what is essentially to be described as a juvenile's capacity to form the *mens rea* element of a criminal offense. *State v. Monahan*, 15 *N.J.* 34 (1954); *State In Interest of M.L.*, 64 *N.J.* 438 (1974); *State In Interest of D.G.W.*, 70 *N.J.* 488 (1976). The common law rule that children under seven were incapable of committing crime was based on the presumption that such children had not the "discretion to discern between good and evil." *State v. Aaron, supra*. The strength of this presumption decreased with the increasing age of the juvenile, such that beyond age seven, the presumption became rebuttable. *Ibid.; Allen v. United States, supra*. In any event, the defense of infancy was complete in that proof of the defense required dismissal of the charge while failure of proof meant that the juvenile was to be tried in the same manner as an adult defendant.

As described by Justice Jacobs in *State v. Monahan, supra*, the 20th Century has seen a change in this approach. Juvenile offenders are viewed as being fundamentally different from adult offenders, and their treatment was rendered fundamentally different through the development of a separate juvenile court system. *Id.* 15 *N.J.* at 37. The concept developed as the *parens patriae* obligation of the State presently embodied in our statute as *N.J.S.A.* 2A:4A–21. The purpose of the juvenile court was rehabilitative rather than retributive, *State v. Goldberg*, 124 *N.J.L.* 272 (Sup.Ct.1940), aff'd 125 *N.J.L.* 501 (E. &

A.1940); *In re Lewis,* 11 *N.J.* 217 (1953); *State In Interest of D.B.S.,* 137 *N.J.Super.* 371 (App.Div.1975).

Further, the United States Supreme Court has rendered a series of opinions which confirm that certain due process constitutional rights ordinarily accorded to adult offenders are not waived by juveniles because of their status as youthful offenders. See *Kent v. United States,* 383 *U.S.* 541, 86 *S.Ct.* 1045, 16 *L.Ed.*2d 84 (1966) (juveniles right to a hearing, right to counsel, and right to discovery material); *In re Gault,* 387 *U.S.* 1, 87 *S.Ct.* 1428, 18 *L.Ed.*2d 527 (1967) (right to notice, privilege against self-incrimination, and right to cross-examine testimony against juvenile); *In re Winship,* 397 *U.S.* 358, 90 *S.Ct.* 1068, 25 *L.Ed.*2d 368 (1970) (right to requirement of proof beyond reasonable doubt).

These cases reflect the Supreme Court's recognition, in line with the modern trend established in the state courts, that juvenile defendants are treated differently than adult defendants. However, while *Gault, Kent,* and *Winship* incorporate into the juvenile court system the specific due process rights dealt with in those opinions, (see also *Haley v. Ohio,* 332 *U.S.* 596, 68 *S.Ct.* 302, 92 *L.Ed.* 224 (1948); *Gallegos v. Colorado,* 370 *U.S.* 49, 82 *S.Ct.* 1209, 8 *L.Ed.*2d 325 (1962); *Debacker v. Brainard,* 396 *U.S.* 28, 90 *S.Ct.* 163, 24 *L.Ed.*2d 148 (1969)), other rights have been left out of the fabric of juvenile justice. See *McKeiver v. Pennsylvania,* 403 *U.S.* 528, 91 *S.Ct.* 1976, 29 *L.Ed.*2d 647 (1971) (trial by jury); see also *United States v. Hill,* 538 *F.*2d 1072 (4 Cir.1976) (trial by jury, right to indictment, citing to *McKeiver, supra* ).

As was described in *State v. Monahan, supra,* this State established a separate juvenile court system in the early years of this century. Other states established similar protocols during and since that time. An act of the Illinois Legislature of 1899 rendered juvenile offenders wards of the state. The Supreme Court of Pennsylvania stated in 1905 that a juvenile proceeding is not "the trial of a child charged with a crime, but

is mercifully to save it from such an ordeal...." *Common-wealth v. Fisher*, 213 *Pa.* 48 (Sup.Ct.1905). In the case of *Lindsay v. Lindsay*, 257 *Ill.* 328, 100 *N.E.* 192 (Sup.Ct.1913), the Illinois Supreme Court described "the prerogative of the state ... as 'parens patriae' to protect the interest of infants." See also *Cinque v. Boyd*, 99 *Conn.* 70 (Sup.Ct.1923), (and the decisions cited therein) which sustained the Connecticut statute establishing a separate juvenile court in that state.

Given this modern trend to establish a separate court system, the identity of those entitled to the benefits of the juvenile courts is a matter of definition. State legislatures have varied on this issue, and it is on this point that the case *sub judice* will be decided. As stated at the outset, the issue squarely before the court on defendants' motions is whether juvenile co-defendants aged six and nine can be held to trial in our juvenile court system on the charges of aggravated sexual assault. Age limitations have historically been important elements in the framework of juvenile justice, and predictably, states differ in their handling of the issue. For purposes of illustration, the court will refer to three states, besides New Jersey, focussing specifically on the states' legislative delineation of the upper and lower boundaries of these statutory age limitations. For our purposes, it can be said that some states set a lower age limitation—that is, a minimum age below which a juvenile court cannot exercise its jurisdiction—while other states set no lower limits.

Illinois law gives its juvenile courts jurisdiction over delinquent youth, defined as those juveniles under 17 years of age charged with a crime, *Ill.Rev.Stat.* ch. 37, § 702–1 *et seq.* Michigan law similarly provides for juvenile court jurisdiction over those under 17 years of age, *Mich.Comp.Laws Ann.* § 712A.1 *et seq.*, in certain cases. While the law on the lower limits of these age limitations is scant, the cases hold that in the absence of explicit statutory provision, there is no lower limit. In *In Matter of Baby X*, 97 *Mich.App.* 111, 293 *N.W.2d* 736 (1980), the Michigan Court of Appeals discussed with approval

the application of § 712A.2 to a new-born infant whose mother was charged with neglect during the pre-natal period. Exercise of juvenile court jurisdiction under the statute was affirmed under the facts of said case. *Id.,* 293 *N.W.*2d at 739. Also, in *In re Blakes,* 4 *Ill.App.*3d 567, 281 *N.E.*2d 454 (1972), a delinquency disposition survived challenge by a delinquent, aged 13, who asserted that the possibility under the statute of eight years incarceration in the state training school for boys for theft of a bag of potato chips violated his constitutional right to equal protection of the laws. The court, citing *In re Gault, supra,* denied the challenge, since the *Gault* holding was limited specifically to the adjudicative, and not the dispositional, stage of a juvenile proceeding. *In re Blakes,* 281 *N.E.*2d at 456. See *McKeiver v. Pennsylvania,* 403 *U.S.* 528, 91 *S.Ct.* 1976, 29 *L.Ed.*2d 647 (1971) which emphasizes the important difference between an adult criminal proceeding and a juvenile one:

> The arguments advanced here seek to equate a juvenile delinquent's dispositional hearing with a criminal trial ... "concern about the inapplicability of ... (inter alia) ... rules of evidence ... chooses to ignore, it seems to us, every aspect of fairness, of concern of sympathy, and of paternal attention that the juvenile court system contemplates ...". [91 *S.Ct.* at 1989]

*See Blakes,* 281 *N.E.*2d at 457.

The other way states have dealt with the age limitation issue is to clearly set out a statutory lower limit. Wisconsin law establishes juvenile court jurisdiction over youths 12 years of age but less than 18, who have allegedly violated state or federal criminal law. *Wis.Stat.Ann.* § 48.01 (West 1986) *et seq.* (*Wis.Stat.Ann.* § 48.13(12) also grants juvenile court jurisdiction to those juveniles *under 12* who are alleged to be in need of the court's protective services, and who have committed a delinquent act.) Construing this statute, the Wisconsin Court of Appeals has held, in *D.V. v. State,* 100 *Wis.*2d 363, 302 *N.W.* 2d 64 (1981), that where a juvenile commits a delinquent act while 11 years old, but where a valid complaint is not lodged until the juvenile is 12, jurisdiction *does* obtain. In affirming, the court in *D.V. v. State* held that the date of the petition,

which was filed after the juvenile became 12, was controlling under the language of the statute. The court stated, *Id.*, 302 *N.W.*2d at 66, that had the legislature so intended, it could have made the date of the commission of the delinquent act controlling (as, indeed, it did elsewhere, as at *Wis.Stat.Ann.* § 48.18), presumably requiring, instead of affirmance, reversal as to *D.V. v. State.*

New Jersey law establishes juvenile court jurisdiction over those under 18 years of age who are charged with committing a delinquent act. *N.J.S.A.* 2A:4A–21 *et seq.* There is no statutory lower age limit. There is, as yet, no decided case which has been brought to the court's attention by the prosecution, the defense, or by the court's research, which establishes a lower age limit. *N.J.S.A.* 2C:14–5(b) states unequivocally that no actor shall be presumed incapable of committing a crime due to his or her age. This clear statutory disavowal of the old common law three-tiered rule leaves the issue open. Presumptions aside, does the law permit holding six and nine year old juvenile co-defendants for trial on the serious charge of aggravated sexual assault? Given the foregoing background, allowing for legislative discretion, and considering the established rule of construction that the Legislature does not say what it does not wish to say, the answer is yes, if, and only if, two conditions are met. First, that the juveniles understand the significance of the trial, aiding, of course, in their own defense; and second, if it can be shown by competent evidence that the juvenile defendants are capable of each and every element of the crime charged. However, the court has ruled that the charges here pending against juvenile co-defendants C.P. and R.D. are dismissed. The reason for this disposition is that the court is not convinced that the juvenile co-defendants in this case are capable of the crime charged. Specifically, the court finds that the psychiatric evidence adduced in this case shows that these juvenile co-defendants could not possibly have formed the intent necessary to commit the crime of aggravated sexual assault.

██ Before going into the specific evidence, it is well to review the posture of this case. Juvenile co-defendants C.P. and R.D. here are moving for dismissal of the charges; the prosecution opposes the dismissal. On motion, the burden of the evidence is on the movant. Thus, the juvenile defendants must show that they are incapable of the intentional acts which are the elements of the crime of aggravated sexual assault, and the standard of proof will be by the preponderance of the evidence.

The statute *N.J.S.A.* 2C:14–2(a)(1) and –2(a)(5) reads as follows:

a. An actor is guilty of aggravated sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances:

(1) The victim is less than 13 years old;

(5) The actor is aided or abetted by one or more other persons and either of the following circumstances exists:

(a) The actor uses physical force or coercion, or

(b) The victim is one whom the actor knew or should have known was physically helpless, mentally defective or mentally incapacitated.

Thus, for our purposes, the *actus reus* of this crime is the act of sexual penetration (as defined, *inter alia*, in *N.J.S.A.* 2C:14–1(c) as "insertion of the … finger … into the … vagina … by the actor") upon another, either where the victim is under 13 years of age, or else where the act of penetration is accomplished by force and is aided by another person. The *mens rea* requirement is read into the crime from *N.J.S.A.* 2C:2–2(c)(3), and the result is, of course, that the *actus reus* must be accompanied by the mental state described in *N.J.S.A.* 2C:2–2(b)(2) as 'knowingly,' in which the actor is aware of the nature of his conduct. Juvenile defendants C.P. and R.D. can be convicted of this crime if they are aware of the significance of the events going on around them to the extent that they can engage in their own defense, and also if they are shown to be capable of each element of the crime: the sexual penetration, the involvement of a victim less than 13 years of age, the use of force, and the aid of another actor. Further, it must be shown

that these acts were all perpetrated with a 'knowing' awareness of the nature of the acts.

The old common law rule of juvenile responsibility as described in *State v. Aaron*, supra, which posited a three-tiered test controlled by the juvenile's age, has been statutorily superseded by a single linear test, dependent only on the degree of intellectual and emotional maturity displayed by the defendant. Of necessity, each case under this test is peculiarly dependent on its facts. Both juvenile co-defendants were interviewed by two specialists. Dr. Heinz Klaatsch, a psychiatrist affiliated with Barnert Memorial Hospital in Paterson, New Jersey, offered a single page of findings on defendant, R.D. Mr. Doug Martinez and Ms. Pat Sermabeikian, the first possessing a master's degree in psychology and the second a master's in social work, offered as evidence a much more in-depth team report on defendant, R.D. Both Martinez and Sermabeikian are affiliated with Barnert Memorial as well. In addition to the written reports mentioned, Klaatsch and Martinez took the stand to testify on behalf of both defendants R.D. and C.P. No evidence in the nature of an expert opinion was offered by the prosecution with respect to these two juvenile co-defendants.[1]

The written reports on juvenile defendant R.D. are revealing. R.D. is described by Martinez as dysphoric to one degree or another, and subject to anxiety stemming both from family stressors as well as an inadequate sense of self-esteem. It was difficult for Martinez to speculate on the source of the family stress insofar as the adult authorities in the home had indicated their parenting styles had changed since the incident under consideration here. In addition, R.D.'s father is incarcerated

---

[1]The court points out that despite liberally granting numerous requests for adjournments to enable the State and defense time to develop evidence, and to brief and prepare the case and highly significant issues, the only evidence before this court is a total of five pages of medical reports and the reiterative testimony of the doctors who prepared them. There were no experts used by the State.

and therefore absent from the home. Despite these findings, Martinez indicates that R.D. has, overall, a positive sense of family and interpersonal relations.

More importantly, R.D.'s examination revealed that, in Martinez' words, "he (R.D.) is very naive, and ignorant of most sexual facts ... he lacks the cognitive development to fully comprehend the impact of what he has done to the victim." Martinez describes R.D.'s risk of recidivism as "low to moderate," based chiefly on his essential lack of understanding of the nature of the acts alleged. Martinez also states that the mother's denial behavior, meant to be protective, has more to do with R.D.'s "moderate" rating than the boy's own clinical status. Summarizing his profile of R.D., Martinez states that R.D. is developmentally delayed, thereby lacking the awareness and knowledge necessary to understand the full meaning and nature of the behavior under consideration, which he also notes occurred spontaneously and in the context of unsupervised play. Martinez concludes by suggesting family and group therapy, as well as counselling for R.D. at an appropriate age level.

Klaatsch's psychiatric evaluation of R.D. is very similar to that of Martinez. He found R.D. to be emotionally immature, and "quite uninformed" on sexual matters; R.D. reportedly knew he was involved in something wrong because of his required court appearances, but could not elaborate. His intellectual functioning was described by Klaatsch as below average, and was emotionally similar to youths several years younger. Klaatsch also recommends only counselling. Both experts reiterated the findings of their reports when called to the witness stand. Both experts denied that R.D. had the ability to understand the acts required in the commission of an aggravated sexual assault, though the experts were never directly questioned as to their own knowledge of the acts requisite to the commission of an aggravated sexual assault.

The situation is similar with regard to juvenile co-defendant C.P.; it is not necessary to reiterate the details, which are in essence identical with the details of the testimony on behalf of R.D. These, then, are the facts on which this court must base its decision. Considering this evidence, can it be that the juvenile co-defendants here are capable of knowingly perpetrating the *actus reus* indicated by the statute? The court finds, based on the evidence presented by the expert witnesses, and the lack of controverting evidence presented by the prosecution, that the answer must be no. I am satisfied by a preponderance of the evidence that these juveniles could not possibly have formed the mental intent necessary, the "knowing awareness," required by the statute. It is important to point out that the specific *actus reus* of sexual penetration is, because of the knowledge requirement, more than a mechanical operation or simply a "penetration." This is not a strict liability crime; it requires specifically a knowing sexual penetration, which would entail an awareness of intangible elements, of symbolic knowledge, which the court is convinced by the evidence presented these juvenile co-defendants could not possibly have had.

The court makes these findings from the credible evidence. The court recognizes its responsibility under the case law and the statutes, and it finds that based on said evidence it grants the motions of defense counsel to dismiss the charges pending. Based on the evidence presented to the court, it is also in the best interest, not only of the families of the juvenile co-defendants, but of the victim as well. It is the hope of the court that, in the absence of further trauma resulting from required court appearances, the healing process can continue for the victim and her family unencumbered. Further, dismissal of the charges would do no violence to the interests of the State in overseeing the behavior of juveniles who are simply too young to be capable of behavior needful of state oversight. The only interests possibly adversely affected by my disposition here today is the interest of public safety; and it should be perfectly plain that there is in reality no true risk there to be guarded

against. It is therefore ordered that the complaints be dismissed.

Finally, the court would point out that these complaints were docketed on April 12, 1985; well over a year later, this court has today determined that the juvenile co-defendants involved lack the cognitive and social development, resulting in failure of the *mens rea* requirement, to have committed the crime in the first place. The court suggests, for the future that in the interests of all concerned, as well as in the interest of judicial efficiency, the proper procedure for matters of this type should include a probable cause hearing for the establishment of the required proofs, by the use of the testimony of the alleged victim, and not by use of police reports only. It is clear that a probable cause hearing is not required either under the statutes or under the court rules when the juvenile defendants are not detained. Nonetheless, the court feels, that as a practical matter, a "pre-trial hearing" of this type would aid in expediting the matter and properly prepare it for trial or motions where juveniles of such tender years are involved. ·