In re F. L. W., a Minor.— (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* F. L. W., Respondent-Appellant.)

Fourth District    No. 15170

Opinion filed June 26, 1979.

CRAVEN, J., dissenting.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Marc D. Towler and Jane F. Bularzik, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

This appeal is in behalf of respondent minor, aged 14 years, from his commitment to the Juvenile Division of the Department of Corrections following a finding of delinquency and being adjudged a ward of the court. The charges were theft (Ill. Rev. Stat. 1977, ch. 38, par. 16—1(a)(1)) and criminal damage to property (Ill. Rev. Stat. 1977, ch. 38, par. 21—1), each under $150. No issues are raised concerning procedure.

Upon appeal it is argued that the trial court abused its discretion in committing the minor to the Juvenile Division and that the commitment for an "indeterminate period" denied his constitutional rights under the Illinois and United States constitutions for the reason that the minor could be incarcerated for seven years, while an adult convicted of such offenses would have been sentenced upon misdemeanors for less than one year.

Upon the issue of abuse of discretion in making such commitment, it is argued that no witness called by the State's Attorney advised or recommended the commitment imposed.

The minor lived in incompatible surroundings in his home and did not wish to return to the custody of his mother. He had been placed in a county youth home for a period of two months prior to the disposition. At the disposition hearing, the testimony of the assistant supervisor and counsellor at the youth home was that the minor was disruptive, provoked fights amongst the other residents and threatened members of the staff with violence, had destroyed the facilities in his room and in the home, including plumbing facilities, had run away and had attempted a second escape. The minor was described as a high security risk and the witness expressed the view that further stay in the home would be detrimental to the other juveniles residing there. A facility known as Chaddock Boys Home was suggested, but it was described as an open facility with no present vacancy to receive the minor, and the view was expressed that it was doubtful that the minor would be accepted at Chaddock while his present condition continued. The minor was described as in need of intensive psychiatric treatment for an indefinite period. No available facility was suggested except the psychiatric ward of a hospital.

A probation officer testified that Chaddock was not a viable placement in the light of the present condition of the minor, and that all other available residential facilities were open and would not be adequate to deal with the minor under the present circumstances. This witness could only suggest the continuing use of the youth home.

The mother of the minor testified that it was not in his best interest that he be returned home. She suggested that some friends in another city might be able to control the minor, but these people were not identified and there was no matter presented in the record suggesting that such persons would consider or could accept his care. Subsequent to the commitment counsel for the minor moved that the trial court reconsider its order, but at that subsequent hearing no further evidence was presented as to available facilities.

■■ In his findings the trial court stated that the best interests of the minor and the public would not be served by any alternative placement other than the Juvenile Division of the Department of Corrections; that there was no alternative placement available in the community or elsewhere and that the continuance in the youth home may be disruptive to his program and a threat to its other residents.

In *In re Buchanan* (1978), 62 Ill. App. 3d 463, 379 N.E.2d 122, it was urged that the trial court abused its discretion in committing a minor to the Department of Corrections. Counsel and the probation officer who testified urged that the minor be placed on probation. Evidence reflected violent behavior toward the personnel of the public schools with

numerous theft offenses. Finding that there was no abuse of discretion by the trial court, the opinion states:

"Section 5—2 of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 705—2) provides for the types of dispositional orders that the court may enter. The trial court may choose, as it sees fit, among the various alternatives; it need not defer to any particular disposition. The choice of dispositional order rests within the sound discretion of the trial court, and we will not interfere with its judgment absent an abuse of discretion. *In re Wilson* (1976), 40 Ill. App. 3d 619, 352 N.E.2d 251.)" (62 Ill. App. 3d 463, 467, 379 N.E.2d 122, 125.)

We conclude that the evidence in this matter supports the exercise of discretion by the trial court.

Upon appeal it is raised for the first time that the commitment to the Juvenile Division of the Department of Corrections violates the equal protection provisions of the fourteenth amendment of the Constitution of the United States and the Illinois Constitution, and that the commitment violates section 11 of article 1 of the Illinois Constitution of 1970. It is asserted that the fact that the minor may be kept in the Department of Corrections until attaining the age of 21 years denies equal protection since an adult misdemeanant could only be held in custody for less than a year.

■■ In *People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353, it was held that a constitutional issue not pertaining to the jurisdiction of the court could not be argued on appeal unless first raised and preserved in the trial court. A dissent in that opinion took the alternative positions that the record showed that the issue had been raised in the trial court, or that there was a jurisdictional issue as to whether the statute charged an offense. The rule of *Amerman* was restated in *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856. The rule has been followed in the several appellate courts in *People v. Koppen* (1975), 29 Ill. App. 3d 29, 329 N.E.2d 421 (aggravated incest); *People v. Hamil* (1974), 20 Ill. App. 3d 901, 314 N.E.2d 251 (sexually dangerous persons); *People v. Stolfo* (1977), 46 Ill. App. 3d 616, 361 N.E.2d 101 (cruel and unusual punishment), and *People v. DuMontelle* (1977), 49 Ill. App. 3d 187, 364 N.E.2d 95 (assessing costs against defendant). The record and report of proceedings here discloses no suggestion of a constitutional issue raised in the trial court, and the motion for reconsideration by the minor does not undertake to present the issue. We follow the rule of *Amerman*.

We note that our courts have ruled upon the issue. In *In re Presley* (1970), 47 Ill. 2d 50, 264 N.E.2d 177, the issue of the constitutionality of a commitment to the Youth Commission was raised by a motion to dismiss

in the trial court and by *habeas corpus*. It was contended that since the minor might be required to remain with the commission until 21 years of age, the statute provided a cruel and unusual punishment in violation of the constitutional rights of the minor. The court pointed out that the Juvenile Court Act specifically provides for the termination of the proceedings "[w]henever the court finds that the best interests of the minor and the public no longer require the wardship of the court * * *" as provided in section 5—11(2) of the Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—11(2)), and that the minor himself may apply to the court for a change in custody or restoration to the custody of his parents as provided in section 5—8(2) of the Act (Ill. Rev. Stat. 1969, ch. 37, par. 705—8(2)). (See *In re Presley* (1970), 47 Ill. 2d 50, 56, 264 N.E.2d 177, 180.) The same rule was followed in *In re Sekeres* (1971), 48 Ill. 2d 431, 270 N.E.2d 7.

The issue of denial of equal protection by reason of the provisions of the Act for disposition was examined in *In re Blakes* (1972), 4 Ill. App. 3d 567, 281 N.E.2d 454, and it was determined that the provision for placing in the Juvenile Division during minority did not deny the minor equal protection.

The opinions in *Presley* and *Blakes* were subsequent to the opinion in the cited *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428. The principal opinion in *In re Gault* limits its holdings to the adjudication of delinquency by its statement "nor do we direct our attention to the post-adjudicative or dispositional process." 387 U.S. 1, 13, 18 L. Ed. 2d 527, 538, 87 S. Ct. 1428, 1436.

It is also urged that the Juvenile Court Act providing that the minor may be maintained in the Juvenile Division until age 21 also violates article 1, section 11 of the Illinois Constitution of 1970, which provides:

"All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."

In *McKeiver v. Pennsylvania* (1971), 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976, the supreme court considered the constitutional issue of the necessity of a jury trial in juvenile delinquency proceedings. The concurring opinion of Mr. Justice White stated:

"A typical disposition in the juvenile court where delinquency is established may authorize confinement until age 21, but it will last no longer and within that period will last only so long as his behavior demonstrates that he remains an unacceptable risk if returned to his family. Nor is authorization for custody until 21 any measure of the seriousness of the particular act that the juvenile has performed." 403 U.S. 528, 552, 29 L. Ed. 2d 647, 665, 91 S. Ct. 1976, 1989-90.

■■ In the light of *Presley*, we conclude that the Juvenile Court Act does not impose a penalty within the context of article 1, section 11, of the Illinois Constitution of 1970.

The judgment of the trial court is affirmed.

Affirmed.

GREEN, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

The conduct of the 14-year-old minor here at most constitutes a Class A misdemeanor. The minor may be incarcerated for up to seven years under this order of commitment. If an adult were to be convicted of offenses arising out of the same conduct, the adult could be sentenced to a maximum of only one year of incarceration. The majority opinion, relying upon *Presley* and *Blakes*, justifies such unequal treatment. Ironically, part of the justification purports to be based upon the salutory purpose of the Juvenile Court Act and the benevolent concern of the State for its juveniles. *Presley* does not purport to have decided the equal protection issue here urged. In *Blakes* such issue does purport to be decided, and I respectfully disagree with the *Blakes* opinion.

It is time, I believe, that we reexamine the question of the long-term commitment of juvenile offenders for relatively petty transgressions in the light of current concepts of equal protection. An in-depth analysis of such issue is found in the recent opinion of the California Supreme Court in *People v. Olivas* (1976), 17 Cal. 3d 236, 131 Cal. Rptr. 55, 551 P.2d 375. The court was there concerned with sentencing a youthful offender who had been tried as an adult so that the context is somewhat different. The equal protection analysis there is applicable here.

Finally, it should be observed that a reading of this record rather clearly indicates that the minor was committed to the Department of Corrections for the reason that the trial court judge had no other community resources available to him. This minor thus becomes warehoused because of inadequate resources available to the judicial system.