*In re* T.L.B. (The People of the State of Illinois, Petitioner-Appellee, v. T.L.B., Respondent-Appellant).

Fourth District   No. 4—88—0302

Opinion filed June 8, 1989.

Daniel D. Yuhas, of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

In March 1987, the respondent minor, born November 9, 1972, was placed on a period of 18 months' probation pursuant to proceedings on a supplemental delinquency petition. (Ill. Rev. Stat. 1985, ch. 37, par. 704—1 (now Ill. Rev. Stat. 1987, ch. 37, par. 805—13).) In February 1988, a petition to revoke the minor's probation was filed alleging criminal damage to property having a value in excess of $300. (Ill. Rev. Stat. 1987, ch. 38, par. 21—1(a).) The minor thereafter admitted and stipulated to the charge, in exchange for which the State agreed to follow the recommendation of the Court Services Department as to disposition. At the conclusion of the dispositional hearing, the trial court ordered the minor committed to the Department of Corrections, Juvenile Division (DOC). This appeal followed.

On appeal, the minor argues, first, the trial judge abused his discretion in sentencing him to DOC for an indeterminate term, since he had been adjudicated delinquent for only two misdemeanor thefts and the judge failed to consider less severe placement alternatives for him. Second, he maintains section 5—33(2) of the Juvenile Court Act of 1987 (Act) (Ill. Rev. Stat. 1987, ch. 37, par. 805—33(2)), which prohibits a circuit court from imposing a determinate-term sentence to DOC upon a minor pursuant to proceedings under the Act, violates the equal-protection clauses of the United States and Illinois Constitutions because the provision permits the commitment of minors for a longer period of time than similarly situated adults and, further, is not

precisely tailored to serve a compelling governmental interest.

The purpose of the Act, generally, is to secure for each minor who comes within its provisions such care and guidance, preferably in his own home, as will serve the moral, emotional, mental, and physical welfare of the minor and the best interests of the community, removing him from the custody of his parents only when his welfare or safety or the protection of the public cannot be adequately safeguarded without removal. (Ill. Rev. Stat. 1987, ch. 37, par. 801—2(1).) The first purpose of the juvenile justice statutory scheme is to correct a minor's conduct. Society is interested for its own sake as well as for the minor's individual welfare in guiding and rehabilitating. *In re Armour* (1974), 59 Ill. 2d 102, 104, 319 N.E.2d 496, 498.

Section 5—23 of the Act sets forth the various dispositional alternatives available to the trial judge as to a minor found delinquent under section 5—33 of the Act (Ill. Rev. Stat. 1987, ch. 37, par. 805—33), including probation or conditional discharge; placement outside the home under section 5—29 of the Act (Ill. Rev. Stat. 1987, ch. 37, par. 805—29); admission or treatment for drug addiction; commitment to the Department of Children and Family Services (DCFS); placement in detention for a period not to exceed 30 days; or commitment to DOC under section 5—33 of the Act (Ill. Rev. Stat. 1987, ch. 37, par. 805—33). (Ill. Rev. Stat. 1987, ch. 37, par. 805—23.) The trial judge is, necessarily, accorded wide discretion in determining an appropriate disposition, and may choose as he sees fit among the various dispositional alternatives and need not defer to any particular disposition. His decision will not be reversed unless an abuse of discretion is demonstrated. *In re A.J.D.* (1987), 162 Ill. App. 3d 661, 666, 515 N.E.2d 1277, 1280; *In re T.A.C.* (1985), 138 Ill. App. 3d 794, 797-98, 486 N.E.2d 375, 378; *In re M.D.B.* (1984), 121 Ill. App. 3d 77, 458 N.E.2d 1380.

Section 5—23(1)(b) of the Act restricts the trial court's consideration of commitment to DOC as a disposition to those cases where (1) the minor is 13 years of age or older, and (2) a term of incarceration is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent. (Ill. Rev. Stat. 1987, ch. 37, par. 805—23(1)(b).) Here, T.L.B. was over the age of 13 and a term of imprisonment is permitted for adults found guilty of attempt (theft under). (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4(a),(c), 16—1(a)(1), (e)(1), 1005—8—3(a)(1).) Section 5—33 of the Act provides that when any delinquent has been adjudged a ward of the court under the Act, the court may commit him to DOC if it finds "(a) his parents *** are unfit or are unable, for some reason other than financial circum-

stances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and the best interests of the minor and the public will not be served by placement under Section 5—29; or (b) it is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent." (Ill. Rev. Stat. 1987, ch. 37, par. 805—33(1).) Here, the court based the commitment of the minor on subsection (a). Ill. Rev. Stat. 1987, ch. 37, par. 805—33(1)(a).

Respondent argues the trial court abused its discretion because his conduct was not outrageous and did not constitute "wanton criminal acts or crimes of violence" and, further, less drastic alternative placements under section 5—29 of the Act could have served the needs of both the minor and the public. Respondent maintains the facts of this case afford no justification for the trial court "leaping from a less restrictive form of correction to the most severe," where his infractions did not involve violence or personal injury and his background "indicated strong potential for improvement."

This was not the respondent's first contact with the circuit court. He has been involved in court proceedings since June 1985, when a juvenile delinquency petition was filed alleging misdemeanor theft in relation to an unauthorized taking of property of a store, a Trivial Pursuit "Genus Edition" game. Respondent was, at that time, 12 years old. He admitted to the allegations of the petition and was ordered to serve 18 months' court supervision.

In January 1987, a supplemental delinquency petition was filed alleging respondent committed the offense of attempt (misdemeanor theft) for trying to expropriate two baseball cards. In February 1987, the minor admitted and stipulated to the charge and was found a delinquent minor. In March 1987, the court discharged the minor from court supervision. At the dispositional hearing for the supplemental delinquency petition on March 31, 1987, the respondent was ordered to serve a term of 18 months' probation. As a condition of his probation, respondent was ordered to spend six days in the Champaign County Youth Detention Center, ending April 5, 1987, and an additional 11-day period of detention from October 8, 1987, to October 18, 1987.

After being released from detention on April 5, 1987, a report of probation violation was filed, alleging that on April 6, 1987, at about 11:45 a.m., respondent removed a check in the amount of $682.70 from an office at the junior high school and thereafter presented the check to a teacher.

In September 1987, respondent's probation was modified, and his period of detention, scheduled for October 1987, was vacated. There-

after, on February 1, 1988, the instant petition to revoke probation was filed, alleging that on November 23, 1987, he committed the offense of criminal damage to property (Ill. Rev. Stat. 1987, ch. 38, par. 21—1(a)) when he knowingly damaged the hood of a 1987 Volkswagen Golf four-door automobile, without the consent of the owner, causing damage in excess of $300. In March 1988, the minor admitted and stipulated to the allegations of the petition. The factual basis was as follows:

> "[P.S.] would testify that he was the owner of a 1987 Volkswagen Golf 4 door automobile that was parked on the parking lot of the church on Philo Road. That a boy scout meeting was letting out, and that this Respondent Minor and two other Minors after the meeting leaned up against his car, and then decided to walk across the roof of his car, causing approximately $1,000 in damage."

The updated dispositional report filed in this cause summarized previous court attempts at influencing respondent as having proved in vain:

> "He was originally unsuccessfully discharged from Court Supervision on 3-3-87, and just twenty-eight days later was sentenced to a term of 18 months Probation, this being his second opportunity to serve a community sentence.
>
> Rather than taking advantage of this second opportunity to avoid a protracted term of incarceration, the respondent has systematically absented himself from school, to the point of being withdrawn/failing in each of his classes. Clearly, this is indicative of the respondent's total lack of desire to better himself, and to comply with Court orders.
>
> The respondent's total Probation record has left much to be desired. Excessive school disciplinary problems beyond his constant absenteeism, refusal to pay Court costs as directed, failure to advise this office of a change of residence and an unwillingness to cooperate at home in the past, illustrates a very mediocre attitude toward the authority of this Court.
>
> Although this officer recognizes the fact that the offenses committed by the respondent minor have not been violent in nature, the consistent, irresponsible, behavior displayed by him, suggests that Probation is an ineffective sentence for this individual, and that more punitive measures must be taken in an effort to dissuade this respondent from further criminal activity as an adult."

The probation officer recommended the minor be committed to DOC.

The State concurred in this recommendation. Counsel for respondent urged the court to give the minor another chance to prove he could learn something from probation. She urged the court to look for another educational setting for the minor, possibly along the lines of the Cunningham Children's Home. The court discussed the respondent's situation, concluding the appropriate dispositional alternative was the commitment to DOC. Now, on appeal, the minor seizes upon certain of these statements made by the trial judge to upset his choice of dispositional alternative, arguing, for example, the judge "even admitted 'we could do more' to assist the minor and then declined to expend local resources on the minor's behalf."

We note, in examining the record before us, the minor has had a number of factors in his favor. He has a good family relationship with his mother, with whom he resided, and his siblings. His mother, who works outside the home, has by all indications attended the numerous hearings in these juvenile proceedings. He is not involved in using drugs or alcohol. He was involved in team sports, playing on a school baseball team and a church basketball team. Nevertheless, he has continued to engage in delinquent conduct.

He has also had the benefit of numerous community-based programs. In ninth grade he was enrolled in the "Recapture Program," a structured program to assist failing students in eventually returning to regular classes. He continued to accumulate excused and unexcused absences and was repeatedly tardy. In 1986-87 school year, he received in-school detentions and warnings for misconduct. In addition, in September 1986, he received a three-day suspension and a five-day suspension; in January 1987, a five-day suspension; and in March 1987, a two-day suspension. While on supervision, the minor completed 20 hours of public service work and toured the Champaign Youth Detention Center, but failed to keep appointments at Court Services Department or make payments toward court costs.

While later serving his six-day detention during probation, he cooperated with the staff at the detention center and seemed to benefit from his stay. On the day following his release from detention, however, he purportedly removed a check from the office of the junior high school, but turned it over to a teacher. As a result of this incident, he was referred to Christie Clinic in July 1987 for an examination related to the behavior problems at school. In the fall of 1987, the minor participated in the school's work program, but was dropped from the program in November 1987 due to poor attendance. The school records for the 1987-88 academic year showed 19 excused absences and 71 unexcused absences through April 8, 1988. His infrac-

tions of school rules continued. Due to his special education classification, he was eligible for a Resource Study class period each day, but he failed to avail himself of this class period or to attend study hall as assigned.

On this record, we conclude the evidence in this matter supports the exercise of discretion by the trial court.

Respondent's second argument, raised for the first time on appeal, is that section 5—33(2) of the Act violates the equal protection provisions of the United States and Illinois Constitutions since, under the provision, a minor may be kept in DOC until attaining the age of 21. The State argues respondent has waived any argument on this issue since he failed to challenge the constitutionality of the provision in the circuit court.

■ Failure by a defendant to raise an issue in the trial court generally constitutes waiver of the issue, and waiver applies to constitutional questions as well as to other issues. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Mayberry* (1976), 63 Ill. 2d 1, 6, 345 N.E.2d 97, 99-100.) Principles of waiver are equally applicable to proceedings involving respondent minors under the Act. (*In re F.L.W.* (1979), 73 Ill. App. 3d 355, 358, 391 N.E.2d 1070, 1072 (and cases cited therein).) In light of our ruling on the merits of respondent's argument, we need not resolve the waiver issue. See *People v. Bryant* (1989), 128 Ill. 2d 448, 453-54.

■ On the merits, we find no equal protection violation posed by the statutory provision. In *People v. S.L.C.* (1986), 115 Ill. 2d 33, 45, 503 N.E.2d 228, 233, our supreme court held the trial court had authority to commit a minor to DOC for a period of one year, stating:

> "The Juvenile Court Act does not expressly require the trial court, if it plans to commit a delinquent minor to the Department, to do so for an indefinite term. Nor does the Act expressly prohibit the trial court from committing a delinquent minor to the Department for a definite term."

In reaching this conclusion, the court rejected the argument of the *amici curiae*, the Department of Corrections and the Prisoner Review Board, that commitment of a delinquent minor to DOC for a determinate term impeded DOC's ability to fulfill the purpose of the Juvenile Court Act—that of rehabilitation—and substituted the principle of incarceration for rehabilitation.

Subsequent to the decision in *In re S.L.C.*, the Illinois legislature amended the Juvenile Court Act, adding the following language:

> "The commitment of a delinquent to the Department of Corrections shall be for an indeterminate term which shall auto-

matically terminate upon the delinquent attaining the age of 21 years unless the delinquent is sooner discharged from parole or custodianship is otherwise terminated in accordance with this Act or as otherwise provided for by law." (Ill. Rev. Stat., 1987 Supp., ch. 37, par. 705—10(2).)

This amendment was accomplished by Public Act 84—1475, effective February 5, 1987. (1986 Ill. Laws 4658, 4667.) By this amendment, the General Assembly intended to accord weight to DOC's discretion on when to release a juvenile and the importance of the exercise of this discretion in his rehabilitation:

"There's also a significant change, important change, that is directed to the sentencing for juveniles. Recently, there was a Supreme Court ruling [, *In re S.L.C.*,] which provided that a Judge *** that there's nowhere in the law that prohibits a Judge from sentencing a delinquent to a determinate sentence when he is brought before the court. What this Conference Committee provides is that a Judge, when sentencing a juvenile, would be given the authority to provide a sentence with an indeterminate sentence that would be in effect until that juvenile reaches the age of 21. That's a clarification. The Department of Corrections had been under the impression that they would treat juveniles under an indeterminate sentencing provisions. The Supreme Court raised doubts about that in October of 1986. This simply provides a more definitive statutory statement. I'd be happy to answer any questions." 84th Ill. Gen. Assem., House Proceedings, Dec. 5, 1986, at 13-14 (statements of Representative O'Connell) (debates on Senate Bill 1565).

"I'm going to support the Bill because of the last point that Representative O'Connell spoke about. This Henry County case that was decided basically said that a Judge in a juvenile offender case can set *** send that juvenile to jail for a determinate period of time. There are seven juvenile institutions in Illinois which have a population of a little over a thousand. If this was *** this recent case was allowed to stay the law, we would have Judges starting to send prisoners, juveniles, for a set period of time, thus removing from the Director of the Department of Corrections the discretion when to *** when to let that juvenile out. The loss of the discretionary release ends up in eroding the Department's ability to motivate good behavior by juvenile delinquents who are behind bars. And in addition, we would have so many extra prisoners, we would have to then, once again, come in and build another juvenile facility. So,

that case was argued by John Breslin from the State's Attorneys Appellate Service Commission and, unfortunately, they didn't win the case and so, as a result, we're here with this statute now to try to correct *** go back to the current practice and avoid this potential serious problem. So, for that reason, I'm going to support the Bill and urge everyone else to." 84th Ill. Gen. Assem., House Proceedings, Dec. 5, 1986, at 14-15 (statements of Representative Cullerton) (debates on Senate Bill 1565).

"I rise in favor of the Bill as well, and I agree with Representative Cullerton that the latter provision makes sense when applied to juveniles and that it's more consistent with the current capabilities of the Department of Corrections." 84th Ill. Gen. Assem., House Proceedings, Dec. 5, 1986, at 15 (statements of Representative McCracken) (debates on Senate Bill 1565).

Respondent urges this court to find section 5—33(2) of the Act unconstitutional, arguing physical liberty is a "fundamental right," such that the State bears the burden of demonstrating its classification has been "precisely tailored" to serve a "compelling governmental interest," and as to which the appropriate standard of review is strict scrutiny. Respondent relies on *People v. Olivas* (1976), 17 Cal. 3d 236, 551 P.2d 375, 131 Cal. Rptr. 55, as the seminal case on this issue. Under sections 5—2 and 5—10 of the former Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, pars. 705—2, 705—10), one of the alternative dispositional orders permitted in respect to a juvenile adjudicated delinquent was commitment to DOC for, in effect, an indeterminate period of time, not to exceed his 21st birthday (Ill. Rev. Stat. 1985, ch. 37, par. 705—11). (*In re T.D.* (1980), 81 Ill. App. 3d 369, 370, 401 N.E.2d 275, 276.) The equal-protection argument raised here was rejected under the former Juvenile Court Act by the Third District Appellate Court in *In re Blakes* (1972), 4 Ill. App. 3d 567, 281 N.E.2d 454, by this court in *In re F.L.W.*, and by the Second District Appellate Court in *In re T.D.* (1980), 81 Ill. App. 3d 369, 401 N.E.2d 275.

In *In re F.L.W.*, this court noted our supreme court had previously ruled upon this issue in *In re Presley* (1970), 47 Ill. 2d 50, 264 N.E.2d 177, the rule of which was thereafter followed in *In re Sekeres* (1971), 48 Ill. 2d 431, 270 N.E.2d 7. In *Presley*, the issue was the constitutionality of a commitment to the Youth Commission, raised by a motion to dismiss in the trial court and by *habeas corpus*. There it was argued since the minor might be required to remain with the Commission until 21 years of age, the statute provided a cruel

and unusual punishment in violation of the constitutional rights of the minor. The *Presley* court stated:

"[T]he Juvenile Court Act specifically provides for the termination of proceedings thereunder 'Whenever the court finds that the best interests of the minor and the public no longer require the wardship of the court ***' (Ill. Rev. Stat. 1969, ch. 37, par. 705—11(2)), and the minor himself may apply to the court for a change of custodianship or his restoration to the custody of his parents (Ill. Rev. Stat. 1969, ch. 37, par. 705—8(2).)." 47 Ill. 2d at 56-57, 264 N.E.2d at 180.

The opinions in both *Presley* and *Blakes* were subsequent to the United States Supreme Court's decision in *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428.

In *In re T.D.*, the court examined and rejected arguments that a juvenile found to have committed misdemeanor offenses is denied due process and equal protection of the laws by commitment to DOC for an indeterminate term. *In re T.D.* rejected the arguments comparable to those of respondent and distinguished *Olivas*, stating:

"Essentially, respondent asks this court to re-examine Illinois case law in light of the recent decision in *People v. Olivas* (1976), 17 Cal. 3d 236, 551 P.2d 375, 131 Cal. Rptr. 55, in which the California Supreme Court found that the difference between the statutory sentencing provisions applicable to adults and those applicable to juveniles who have been tried as adults denied equal protection of the law to juveniles. *Olivas* must be distinguished, however, as the minor defendant in that case was not prosecuted as a juvenile pursuant to the California juvenile code, but, instead, was prosecuted as an adult. Under the laws of California then in force a juvenile was required to be sentenced under the juvenile code even when prosecuted as an adult and, therefore, remained subject to the potentially longer confinement provided in the juvenile code in either event. In Illinois, however, a minor who elects to be prosecuted as an adult and is convicted of a criminal offense will be sentenced as an adult. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—5—3(a).) The *Olivas* court did not address the question presented here. See *People v. Olivas* (1976), 17 Cal. 3d 236, 243 n.11, 551 P.2d 375, 379 n.11, 131 Cal. Rptr. 55, 59 n.11." *In re T.D.*, 81 Ill. App. 3d at 371, 401 N.E.2d at 276.

The majority opinions of this court in *In re F.L.W.* and *In re E.H.* (1980), 82 Ill. App. 3d 514, 402 N.E.2d 661, implicitly rejected the applicability of *Olivas*, which was explicitly referred to by the dissenting

judge in each case. The *In re T.D.* court found no deprivation of equal protection in commitment of minors for an indeterminate term, reasoning:

"We do not find adult offenders and juveniles adjudicated delinquent to be 'similarly circumstanced' and, indeed, it is not the purpose of the Illinois Criminal Code and Juvenile Court Act to treat them as similarly circumstanced. The Juvenile Court Act has a legitimate and salutary goal, 'to provide for the rehabilitation of delinquent minors at a stage before they have embarked upon the commission of substantive criminal offenses.' (*In re Presley* (1970), 47 Ill. 2d 50, 56, 264 N.E.2d 177, 180.)
\*\*\*

To this end the [circuit court exercising its jurisdiction pursuant to the provisions of the Juvenile Court Act] acts as *parens patriae* (*People v. Zepeda* (1970), 47 Ill. 2d 23, 29, 265 N.E.2d 647, 650), and the court and its allied agencies must be enabled to give the minor the care and guidance the Act is designed to provide (Ill. Rev. Stat. 1977, ch. 37, par. 701—2(1)). As the indeterminate sentencing scheme of the Act is considered to play a useful role in achieving this goal and is applied similarly to all juveniles declared to be delinquent, it meets constitutional standards.

We note further that the Act offers unique benefits and favorable treatment to juvenile offenders which are not available to adult offenders. \*\*\* In addition to [the] continuous opportunity to seek early release, the juvenile incurs no criminal record and is not disqualified from subsequently holding public office or receiving any license other than, in an appropriate case, one relating to the operation of motor vehicles. (Ill. Rev. Stat. 1977, ch. 37, par. 702—9(1).) There is also special provision for the confinement of minors, who, if under 17 years of age, may not be incarcerated with adult criminal offenders. Ill. Rev. Stat. 1977, ch. 37, par. 702—8(1).

In our view it is particularly noteworthy that a juvenile has the right to choose to be prosecuted as an adult for any conduct which constitutes a criminal offense. (Ill. Rev. Stat. 1977, ch. 37, par. 702—7(5).) If he does so, he thereby waives the rights and benefits which attach to juvenile proceedings and will be subject to the same sentence as an adult offender. See *People v. Gooden* (1977), 56 Ill. App. 3d 408, 371 N.E.2d 1089; *People v. Shaw* (1972), 3 Ill. App. 3d 1096, 279 N.E.2d 729." (*In re T.D.*, 81 Ill. App. 3d at 372-73, 401 N.E.2d at 277.)

The Act still permits the juvenile the right to choose to be prosecuted as an adult for any conduct which constitutes a criminal offense. Ill. Rev. Stat. 1987, ch. 37, par. 805—4(5).

Inasmuch as section 5—33(2) codified the express proscription that commitment of a delinquent "shall be" for an indeterminate term, and such commitment previously survived judicial scrutiny, we see no reason to disturb the well-reasoned authorities rejecting the applicability of equal-protection analysis.

For the reasons stated herein, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.