192 Ill. App.3d 886 (1989)
549 N.E.2d 695
In re B.S., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
B.S., Respondent-Appellant).
No. 1-88-0096.
Illinois Appellate Court  First District (6th Division).
Opinion filed December 22, 1989.
*887 Michael J. Pelletier and Elizabeth Clarke, both of State Appellate Defender's Office of Chicago, for appellant.
Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, David R. Butzen, and Mercedes Luque-Rosales, Assistant State's Attorneys, of counsel), for the People.
Reversed and remanded.
JUSTICE LaPORTA delivered the opinion of the court:
Following an adjudicatory hearing, respondent was found delinquent on a charge of theft of property valued under $300 (Ill. Rev. Stat. 1987, ch. 38, par. 16-1(a)(1)), was adjudicated a ward of the State, and was committed to the Juvenile Division of the Illinois Department of Corrections for an indeterminate period. On appeal, respondent contends that (1) the evidence failed to establish that the Department of Corrections was the least restrictive placement where he could receive treatment, (2) his commitment for an indeterminate period violated his constitutional rights to equal protection, due process, and proportionate penalties, and (3) trial counsel's failure to raise this constitutional issue deprived him of his right to effective assistance of counsel.
The evidence adduced at the adjudicatory hearing established that about 2 p.m. on October 12, 1987, the 13-year-old respondent *888 went with his mother to the Payless Shoes store located at 6145 North Broadway in Chicago, Illinois. When he entered the store, respondent was carrying a brown paper bag that contained several items. While in the shoe store, respondent tried on a pair of boots but did not buy them because they were not the correct size. Before leaving, respondent took a pair of white high-top gym shoes and placed them in the bag he had carried into the store. Respondent and his mother then left the shoe store without paying for the gym shoes, which were valued at $27.99. Upon consideration of the evidence presented, the trial court found the respondent delinquent on the charge of theft.
At the disposition hearing, probation officer LuAnn Nystrom testified that respondent had been referred to Intensive Probation Services but was rejected as a candidate for that program. Nystrom also testified as to the contents of a report of respondent's behavior while at the Audy Home. That report, dated December 1, 1987, indicated that respondent exhibited an abrupt and continued deterioration in his behavior, which included abusive acts in the classroom and threatening, aggressive, disobedient, and quarrelsome behavior. Nystrom also reported that respondent would not be considered a candidate for placement through the Department of Children and Family Services based upon the difficulty in placing him due to his sometimes violent reactions; the likelihood that his mother would be uncooperative; his need for counseling; the assessment that he could best be treated in the community; the assessment that there had not been sufficient or reasonable efforts to keep him in the home; and the fact that potential placements within the community had not been exhausted.
Nystrom indicated that a residential placement through the board of education was inappropriate because respondent was enrolled at the Joseph Academy for emotionally disturbed youngsters and because there were adequate community support services available. Nystrom stated further that respondent had been involved in counseling with Paul Kredow of Alternatives, Inc., a community-based counseling service, since May 1987. Nystrom expressed her opinion that respondent had made progress with this counseling situation and that he had the potential to do well with treatment in the home. Nystrom concluded that placement in the Department of Corrections would be inappropriate for respondent and recommended a referral to Unified Delinquency Intervention System.
Probation officer McAdoo from Intensive Probation Services testified that respondent was not an appropriate candidate for their program *889 based upon the quantity of petitions he had accrued by the age of 13; the fact that seven of those petitions were for crimes against people; respondent's attitude; his lack of maturity; and his lack of remorse or understanding of his court involvement. McAdoo recommended that respondent be committed to the Department of Corrections. McAdoo also stated that support from the home environment for respondent was minimal and that the Department of Corrections had the ability to handle emotionally disturbed children.
Mr. Lampley of Intensive Probation Services testified that commitment to the Department of Corrections was the only appropriate recommendation before the court, but also stated that residential placement in an inpatient counseling facility was a possibility.
Also before the court was a social investigation report prepared by Nystrom which reflected that respondent lived with his mother in a two-bedroom apartment. Respondent's mother was unemployed but received benefits from the Illinois Department of Public Aid. Although respondent's father made child-support payments to the Department of Public Aid, he had very little contact or involvement with respondent. The report also indicated that respondent had two prior court referrals for neglect by his mother. Both of these charges were dismissed for want of prosecution. Respondent had eight other court referrals for delinquent matters which were dismissed for want of prosecution or stricken with leave to reinstate. Respondent was found delinquent of criminal damage to property in July 1985 and received a one-year term of supervision which was terminated satisfactorily. Respondent received 18 months' probation in February 1987, upon finding of delinquency for battery. In September 1987, respondent received a term of 18 months' probation upon charges of aggravated assault and disorderly conduct. Respondent also had two station adjustments involving one charge of auto theft and one charge of battery involving a relative.
Nystrom's report reflected her opinion that although the instant offense was respondent's third finding of delinquency, commitment to the Department of Corrections would be inappropriate. The report also stated that Nystrom believed that respondent was an emotionally disturbed youngster who would benefit from placement in a residential treatment center where he would receive long-term therapy and an education.
The trial court also had before it a social assessment and psychological evaluation of respondent prepared by Dr. Clifton Saper, adolescent program director of the Charter Barclay Hospital. Dr. Saper's report indicated that respondent needed continued therapy and that *890 incarceration would be an extremely destructive alternative. Saper recommended probation and continued treatment. Saper also indicated that if respondent did not exhibit progress after six months, residential treatment alternatives should be investigated along with a request to the Chicago board of education for a review of respondent's case by a multidisciplinary staff.
Finally, the trial court had before it a letter from Paul Kredow, a family therapist with Alternatives, Inc. Kredow's letter identified the long-term issues faced by respondent and recommended that respondent be hospitalized in an adolescent unit of a hospital that could provide intensive treatment for his problems, including individual psychotherapy, group therapy, psychiatric screening, and family therapy.
Respondent testified that his attendance at Joseph Academy was excellent and that he would continue to attend school if given the opportunity to do so. Respondent's mother testified that she would be willing to undergo more intensive counseling to help her son. Defense counsel reminded the court that one of the reasons given by the Department of Children and Family Services in refusing to place respondent was the fact that other placement opportunities in the community had not been fully explored. Upon consideration of the evidence presented and the arguments of counsel, the trial court indicated that the Department of Corrections did provide rehabilitative services as well as the opportunity for education and vocational training. The trial judge stated further that he had no alternative other than commitment to the Department of Corrections because no alternatives had been presented to the court other than returning respondent to his home with his mother. The trial judge stated that he did not believe that returning respondent to his mother's home was in the best interests of the minor or the public. Finding that the public had to be protected from delinquent behavior of the respondent, the court committed him to the Department of Corrections.
 1, 2 Respondent initially contends that the trial court erred in committing him to the Department of Corrections. Section 5-23 of the Juvenile Court Act of 1987 (Act) (Ill. Rev. Stat. 1987, ch. 37, par. 805-23) sets out the various dispositional alternatives available to a trial court once a minor has been found delinquent. These alternatives include probation or conditional discharge; placement outside the home; admission or treatment for drug addiction; commitment to the Department of Children and Family Services; placement in detention for a period not to exceed 30 days; or commitment to the Department of Corrections. (Ill. Rev. Stat. 1987, ch. 37, par. 805-23.) The Act also provides that a minor may be committed to the Department *891 of Corrections if the court finds that (a) his parents are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and the best interests of the minor and the public will not be served by placement under section 5-29; or (b) it is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent. Ill. Rev. Stat. 1987, ch. 37, par. 805-33(1).
 3 The disposition of a minor rests within the discretion of the trial judge, whose decision will not be disturbed unless it is contrary to the manifest weight of the evidence. (In re J.C. (1987), 163 Ill. App.3d 877, 886, 516 N.E.2d 1326, 1332; In re T.M. (1984), 125 Ill. App.3d 859, 861, 466 N.E.2d 1328, 1330.) It is well established that delinquency proceedings are protective, not penal in nature, and the first purpose of the Act is not to punish, but to correct and to rehabilitate. (In re Armour (1974), 59 Ill.2d 102, 104, 319 N.E.2d 496, 498; In re M.D.B. (1984), 121 Ill. App.3d 77, 83, 458 N.E.2d 1380, 1385.) Commitment is to be used only when less severe placement alternatives would not be in the best interests of the minor and the public. In re M.D.B., 121 Ill. App.3d at 83, 458 N.E.2d at 1385.
Respondent argues that the trial court erred in failing to investigate or consider less restrictive placements before committing him to the Department of Corrections. We agree.
The evidence presented at the dispositional hearing indicated that respondent had been involved in a regular program of counseling with Paul Kredow of Alternatives, Inc., and that respondent had shown progress since starting this program. His attendance at Joseph Academy was excellent, and he expressed a desire to return to school. His mother testified that she was willing to undergo an intensive counseling program in order to help her son. The opinions of Paul Kredow, LuAnn Nystrom, and Dr. Clifton Saper revealed that respondent would benefit most from a residential treatment alternative and indicated that commitment of respondent to the Department of Corrections would be, at best, inappropriate and, at worst, extremely destructive.
We believe it is significant that respondent could not be placed with the Department of Children and Family Services for reasons which included the assessment that he could best be treated in the community; the assessment that there had not been sufficient or reasonable efforts to keep him in the home; and the fact that potential placements within the community had not been exhausted. Probation officer Nystrom recommended a referral to Unified Delinquency Intervention *892 System, and defense counsel argued that other placement opportunities in the community had not been fully explored. In committing respondent to the Department of Corrections, the trial judge specifically stated that he had no other alternative because none had been presented. We recognize that the trial judge predicated his decision upon the alternatives before him at the time of the hearing. We believe, however, that the record indicates that the prosecution and defense counsel were not fully prepared to advise the court of all possible placement alternatives. Thus, it appears that further investigation into potential placements was required and that, if necessary, the hearing should have been continued.
We find this case is analogous to In re P.S.B. (1988), 174 Ill. App.3d 114, 528 N.E.2d 769, which involved a minor who was committed to the Department of Corrections despite evidence that he required treatment for substance abuse. The court entered an order committing the minor because that was the "only reasonable alternative before the court." (In re P.S.B., 174 Ill. App.3d at 118, 528 N.E.2d at 772.) There it was held that there was insufficient evidence presented regarding the type, method, and procedures of the available long-term treatment options and that the matter deserved more attention by the trial court. (In re P.S.B., 174 Ill. App.3d at 119, 528 N.E.2d at 773.) The cause was, therefore, remanded for a new dispositional hearing.
In the case of In re Wealer (1976), 42 Ill. App.3d 479, 355 N.E.2d 187, a minor was committed to the Department of Corrections because the county in which she resided did not have the facilities to provide the supervision and assistance she required. There, the court recognized the importance of "an active concern and involvement in the placement of the minor" by the juvenile court. (In re Wealer, 42 Ill. App.3d at 483, 355 N.E.2d at 190.) The court also noted that the trial court had made no inquiry into the possibility of placing the minor with her brother as an alternative to commitment. (In re Wealer, 42 Ill. App.3d at 483, 355 N.E.2d at 190.) The court concluded that the best interests of the minor and the public required a new dispositional hearing for consideration of all relevant factors, including other available alternative dispositions. In re Wealer, 42 Ill. App.3d at 484, 355 N.E.2d at 191.
 4 The record in the case sub judice reveals that although it was within the trial court's discretion to commit respondent to the Department of Corrections, there was insufficient inquiry into alternative placements within the community which would be less restrictive and would afford respondent the rehabilitation and treatment he *893 requires. The best interests of respondent and the public would best be served by a new dispositional hearing to examine alternative placements available to respondent within the community.
 5 Respondent also asserts that his commitment for an indeterminate period violated his constitutional rights to equal protection, due process, and proportionate penalties. Because respondent failed to challenge the constitutionality of his commitment in the trial court, he has waived argument of this issue on appeal. In re E.H. (1980), 82 Ill. App.3d 514, 402 N.E.2d 661; In re F.L.W. (1979), 73 Ill. App.3d 355, 391 N.E.2d 1070.
Even if respondent had preserved this issue for appeal, his claim would be without merit. Because the indeterminate sentencing scheme of the Act is considered to play a useful role in achieving the rehabilitation of delinquent minors and is applied similarly to all juveniles declared to be delinquent, it meets constitutional standards. (In re T.L.B. (1989), 184 Ill. App.3d 213, 223, 539 N.E.2d 1340, 1347.) The Act also offers unique benefits to juvenile offenders which are not available to adult offenders: the continuous opportunity to seek early release; no criminal record incurred; no disqualification from subsequently holding public office or receiving any license other than, in an appropriate case, one relating to the operation of motor vehicles. (In re T.L.B., 184 Ill. App.3d at 223, 539 N.E.2d at 1347.) Adult offenders and juveniles adjudicated delinquent are not similarly circumstanced, and they need not be treated similarly. (In re Presley (1970), 47 Ill.2d 50, 56, 264 N.E.2d 177, 180.) Consequently, respondent's commitment for an indeterminate period did not violate his rights to equal protection, due process, and proportionate penalties.
Finally, respondent argues that trial counsel's failure to raise this constitutional issue deprived him of his right to effective assistance of counsel. We disagree.
 6, 7 The adequacy of trial counsel entitles a respondent to a new trial only if his counsel was actually incompetent, as reflected in the performance of his duties as trial attorney, and if this incompetence produced substantial prejudice to the respondent without which the result of the trial would probably have been different. (People v. Albanese (1984), 104 Ill.2d 504, 525-26, 473 N.E.2d 1246, 1255-56.) A respondent is entitled to competent, not perfect, representation. (People v. Eddmonds (1984), 101 Ill.2d 44, 69, 461 N.E.2d 347, 359.) When incompetency of trial counsel is alleged, the reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Albanese, 104 *894 Ill.2d at 526, 473 N.E.2d at 1255.
 8 We have previously held that commitment of respondent for an indeterminate period did not violate his constitutional rights. Thus, trial counsel's failure to raise this issue did not result in substantial prejudice without which the result of the trial would have been different. Albanese, 104 Ill.2d at 525-26, 473 N.E.2d at 1255-56.
For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with this opinion.
Reversed and remanded.
QUINLAN,[*] J., concurs.
JUSTICE McNAMARA dissenting:
I respectfully dissent from the majority's conclusion that commitment of respondent to the Department of Corrections was inappropriate. As the majority concedes, very few alternatives were available to the court in the placement of respondent, and the record is clear that the able and experienced trial judge considered all possibilities before making his decision.
Placing respondent on probation and allowing him to go home, where neither he nor his mother had any insight to his behavior, would have been disastrous. Understandably, in view of respondent's repeated delinquent behavior, placement in an institution designed for dependent or neglected children would have been impossible. The trial court also had before it the report that respondent's delinquent behavior continued while he was at Audy Home. The trial court's decision to commit respondent to the Department of Corrections was appropriate.
I would affirm that decision.
NOTES
[*] Justice Quinlan participated in this opinion prior to his resignation from the court.