*In re* A.H., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. James Holt, Respondent-Appellant).

Fourth District   No. 4—92—0012

Opinion filed September 30, 1992.

Kristen H. Fischer Law Offices, of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Beth McGann, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Diana Lenik, of Urbana, guardian *ad litem*.

JUSTICE KNECHT delivered the opinion of the court:

Respondent, James Holt, appeals from the Champaign County circuit court's dispositional order entered after a finding his minor child, A.H., born January 31, 1991, neglected. Respondent appeals from the conditions in the order which granted his wife, Dawn Holt, the exclusive use and possession of the marital residence and of a jointly owned vehicle. He contends these requirements are procedurally deficient because the trial judge failed to specify the time period respondent would be denied access to this property. He also contends the order was fundamentally unfair because he was not provided ample notice and opportunity to present evidence before the order was entered. The trial judge's order did sufficiently specify the time period it would remain in effect, but we reverse and remand nonetheless. Respondent was denied an opportunity to present evidence against the imposition of these conditions because he was not informed these conditions might be imposed.

The Holts were married in August 1990. A.H. was born January 31, 1991. The family became involved with the Department of Children and Family Services (DCFS) in April 1991, when a report was indicated due to a medical diagnosis A.H. was failing to thrive. A second report was indicated May 17, 1991, due to domestic violence against Dawn by respondent. In response to Dawn's communicated desire to return to Pennsylvania to reside with her family, DCFS obtained plane tickets for Dawn and A.H.

On July 22, 1991, the Portage police department in Pennsylvania responded to a domestic violence report where Dawn and A.H. were residing. Respondent had arrived in Pennsylvania approximately two weeks after Dawn and A.H. relocated there. The Pennsylvania Protective Services notified DCFS when it learned Dawn and A.H. were leaving Pennsylvania to again reside with respondent.

On August 21, 1991, Dawn was leaving to go to work and intended to take A.H. to a baby-sitter. Respondent did not want Dawn to take A.H. to the sitter. He grabbed Dawn and forced her against a wall. Respondent's brother John entered the room to as-

sist Dawn. He and respondent began fighting. Respondent was arrested and a battery charge was lodged against him for his actions toward Dawn. When this charge was lodged, respondent was already serving a term of probation for an earlier battery offense against Dawn. Dawn asked the State's Attorney's office to drop the pending battery charge against respondent.

At the September 24, 1991, shelter-care hearing, Debra Jones, a child protective investigator for DCFS, testified Dawn reported her husband was violent toward her fairly often. Also during this hearing, respondent stated his mental health counselor indicated respondent's primary problem was his temper. At the conclusion of the hearing, the trial judge granted DCFS temporary custody of A.H.

On October 29, 1991, an adjudicatory hearing was held. Respondent and Dawn admitted and stipulated A.H. was neglected because her environment was injurious to her welfare while she resided with them. An additional count alleging that A.H. was abused was withdrawn. The dispositional hearing was held on December 2, 1991. The background report was prepared by Children's Home and Aid Society. During her interview, Dawn revealed respondent became aggressive and violent after they married. She had stated her desire to leave respondent many times. She feared leaving respondent because he reportedly had told her he would "get everybody against [her] and then [she would] never get [A.H.] back." The report also indicated Dawn was making all payments toward their jointly owned vehicle, as well as rent and utilities for the trailer where the parties resided. Respondent was contributing nothing to family expenses.

As part of his dispositional order, the trial judge required respondent to vacate the marital residence by 5 p.m. December 2 and only remove his clothing and items for personal hygiene. Dawn was awarded exclusive use of the residence and jointly owned vehicle. These requirements were to continue until further order of the court. Neither the State, the guardian *ad litem*, nor Dawn's counsel had recommended these conditions. The case was continued for a review hearing on June 4, 1992. The trial judge also indicated if the circumstances significantly progressed, he might amend the order before the review date.

The trial judge noted respondent's violent tendencies created the most significant problem which required removing A.H. from the Holts' custody. He concluded that because of this violence the Holts could not share a residence and provide an appropriate envi-

ronment for A.H. While Dawn remained dependent and intimidated by respondent, A.H. would not be returned to their care. The judge stated, "[i]f there is to be any meaningful progress, Mrs. Holt cannot go on parenting Mr. Holt and being subjected to abuse by him and do the things she has to do to work toward the return of her child."

Respondent objects to the conditions that Dawn receive exclusive occupation of the marital residence and use of the jointly owned vehicle. He contends although the trial judge did not characterize these conditions as a protective order, they could have only arisen from section 2—25 of the Juvenile Court Act of 1987 (Act) (Ill. Rev. Stat. 1989, ch. 37, par. 802—25).

■■ Section 2—23 of the Act provides an order of disposition may include an order of protection under section 2—25. (Ill. Rev. Stat. 1989, ch. 37, par. 802—23.) Section 2—25 states an order of protection may set forth reasonable conditions of behavior to be observed for a specific period. It also outlines certain requirements which may be included in a protective order. These requirements include orders "[t]o stay away from the home," "[t]o abstain from offensive conduct against the minor, his parent or any person to whom custody of the minor is awarded," and "[t]o refrain from acts of commission or omission that tend to make the home not a proper place for the minor." Ill. Rev. Stat. 1989, ch. 37, pars. 802—25(1)(a), (1)(c), (1)(g).

Section 2—25(5) of the Act further provides:

"Any person against whom an order of protection is sought *** has rights to be present at the hearing, to be informed prior to the hearing in writing of the contents of the petition seeking a protective order and of the date, place and time of such hearing, and to cross examine witnesses called by the petitioner and to present witnesses and argument in opposition to the relief sought in the petition." Ill. Rev. Stat. 1989, ch. 37, par. 802—25(5).

Respondent argues the trial judge abused his discretion by granting exclusive use and possession of the jointly owned vehicle to Dawn. He contends the Act does not contemplate the judge's action because the action involves marital property rights and not behavior or conduct. In the alternative, he contends even if this action is authorized by the Act, granting the vehicle to Dawn was not reasonably related to the goal of returning A.H. to her parents, because, as the record indicates, when the vehicle was granted to Dawn, she could not legally drive alone because she had only a

learner's permit. Respondent argues this condition can be viewed only as punitive in nature.

Respondent also argues the trial judge's grant to Dawn of the exclusive occupation of the marital home and use of the vehicle was procedurally deficient for two reasons. He initially contends the order failed to specify a time period as required by the Act. He also contends because he was not notified a protective order might be entered, he was denied an opportunity to present evidence. He directs us to this court's rulings in *In re S.A.C.* (1986), 147 Ill. App. 3d 656, 498 N.E.2d 285, and *In re T.W.* (1988), 166 Ill. App. 3d 1022, 520 N.E.2d 1107, as support for his argument he was denied fundamental fairness by this alleged lack of a reasonable opportunity to present evidence before a protective order is entered.

The State initially contends respondent waived review of the order because he did not object to it at the conclusion of the proceedings. It also argues because the conditions implemented by the trial judge did not constitute a protective order, the statutory conditions for entering such an order do not apply. It further argues the alleged procedural errors were addressed and reconciled by the trial judge.

■ The State is correct respondent did not formally object to the conditions in the order. Principles of waiver apply to proceedings conducted pursuant to the Act. (*In re T.L.B.* (1989), 184 Ill. App. 3d 213, 219, 539 N.E.2d 1340, 1344; *In re F.L.W.* (1979), 73 Ill. App. 3d 355, 358, 391 N.E.2d 1070, 1072.) This case, however, raises significant concerns about respondent's property rights in a marital home and a jointly owned vehicle. Supreme Court Rule 366(b)(1)(i) provides "[a]ny error of law affecting the judgment or order appealed from may be brought up for review." (134 Ill. 2d R. 366(b)(1)(i).) We choose to exercise our discretion under this rule to review the alleged impropriety of the trial judge's order.

■ Respondent's first claim, *i.e.*, the trial judge did not specify a time period during which the order would remain in effect, fails. The judge indicated the contested orders were to continue until further order of the court and he continued the matter until June 4, 1992, for a review hearing. He also indicated the order could be modified earlier if conditions warranted such action. These factors sufficiently informed respondent the order would remain effective until June 4 unless conditions warranted revision. However, the procedures applied before the order was entered were deficient and require reversal of the order.

■ We reject the State's arguments the order did not have to be entered pursuant to the conditions provided in section 2—25 of the Act. The State fails to direct this court to additional provisions which authorize entry of a protective order and *do not* require respondent receive notice and an opportunity to defend against such an order. The trial judge's order was procedurally deficient. Respondent was denied the opportunity to respond to the potential denial to him of access to his marital home and jointly owned vehicle.

The trial judge explained to respondent and Dawn that if A.H. was made a ward of the court, particular conditions could be placed on them before they could regain custody of A.H. However, no pleading ever mentioned a protective order, and respondent was never informed the judge could consider entering a protective order against him. Section 2—25(4) of the Act specifically requires the party against whom an order is sought receive ample notice and opportunity to respond. Ill. Rev. Stat. 1989, ch. 37, par. 802—25(4).

Although factually distinct, the cases to which respondent directs us support our finding the trial judge abused his discretion by entering a protective order without respondent receiving prior notice and opportunity to present evidence against its entry. In *T.W.* (166 Ill. App. 3d at 1024-25, 520 N.E.2d at 1107-08), this court concluded the protective order against a nonrelative of the children was properly entered because, although the nonrelative was not named in the original petition filed by the State, he was named in a *later* petition which complied with the additional statutory requirements. He also questioned the State's witnesses and was given an opportunity to be heard.

In *S.A.C.* (147 Ill. App. 3d at 659, 498 N.E.2d at 287), this court concluded the trial judge erred by entering the protective order sought by the State. The parent was denied a meaningful opportunity to object to the trial judge's entry of the order against him because he was not represented by counsel, had not been served with summons, or named as a respondent before the order was entered.

The orders entered in the above cases were sought by the State. The trial judge in this case entered the order *sua sponte* at the close of the dispositional hearing. Contrary to the facts in *S.A.C.*, respondent had no prior notice an order could be entered against him.

This court also reversed a protective order in *In re Rider* (1983), 113 Ill. App. 3d 1000, 1004, 447 N.E.2d 1384, 1387 (entered pursuant to section 5—4 of the then Juvenile Court Act (Ill. Rev.

18

Stat. 1983, ch. 37, par. 705—4)), because the order was based on evidence adduced in chambers when the noncustodial father was not present. Although respondent in this case was present, he could not have known the evidence would be used to obtain a protective order which had not been sought by any party, but was entered by the trial judge *sua sponte.*

We reverse the trial judge's order and remand for further proceedings consistent with the views expressed herein. Our reversal is based on procedural deficiencies before the order was entered. We express no view on the substance of the conditions which the trial judge required of the parties.

Reversed and remanded.

STEIGMANN and COOK, JJ., concur.