194 Ill. App.3d 740 (1990)
551 N.E.2d 337
In re G.S., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
G.S., a Minor, Respondent-Appellant).
No. 1-88-0057.
Illinois Appellate Court  First District (6th Division).
Opinion filed February 16, 1990.
Rehearing denied March 27, 1990.
*741 Randolph N. Stone, Public Defender, of Chicago (Thomas M. Donnelly, Assistant Public Defender, of counsel), for appellant.
Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Diann L. Doppelt, Assistant State's Attorneys, of counsel), for the People.
Ruthanne DeWolfe and Diane Redleaf, both of Legal Assistance Foundation of Chicago, of Chicago, for amicus curiae.
Judgment affirmed.
JUSTICE McNAMARA delivered the opinion of the court:
Respondent G.S., a minor, appeals from a finding of delinquency based on an aggravated battery. He contends that commitment to the Department of Corrections, rather than referral for private psychiatric treatment, was an abuse of discretion, violating due process and the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701-1).
Robert Gordon, the 15-year-old victim, testified that on May 16, 1987, at 10 p.m., he was walking with two friends in Chicago when he heard Brian Martin yelling gang sayings. Gordon and his friends crossed the street to avoid Martin. They heard a gunshot and began to run. Gordon turned and saw G.S. fire twice more at Gordon, who fell to the ground when a bullet struck his right shin. Gordon then saw G.S. on one knee aim and fire again, but the bullet struck a garage. Gordon subsequently underwent surgery to remove the bullet and fragments.
John Goodwin, age 16, testified that he was with Gordon when he saw G.S. shooting at them. After Gordon fell, Goodwin saw G.S. drop to one knee and shoot at Goodwin. He believed G.S. was wearing a short-sleeved white shirt.
G.S. testified that he and several friends were walking that night when they saw Gordon and his friends. G.S. then saw Sammy Rafer inside a car, waving a gun. Rafer fired the gun four or five times.
G.S.'s brother testified for G.S. that on that night, G.S. wore a black T-shirt.
Based on the evidence, the court made a finding of delinquency.
At a subsequent dispositional hearing, probation officer Keller testified *742 that G.S. had three previous court referrals, two for battery, and one for arson. He pointed out that the psychiatric evaluation recommended hospitalization and specified that it could be either public, private or in a correctional setting. G.S. had been hospitalized at Riveredge Hospital in 1986 for psychiatric treatment. G.S.'s mother wished to place G.S. in a 45-day program at Forrest Hospital, which was a secured setting. Keller recommended, based on the severity of the offense, his interviews with G.S.'s psychiatrist and the various psychological evaluations, that G.S. be committed to the Department of Corrections.
Dr. Daniel Schiff, a psychiatrist with the county department, juvenile division, evaluated G.S. Dr. Schiff concluded in writing that in-patient psychiatric hospitalization would assist in further evaluating any neurological problems and working out a lasting treatment program. He described G.S. as emotionally unstable, with quick surges of untempered emotion, and with possible brain or seizure disorders.
A report from Dr. Robert Zagar, a psychologist, stated that G.S. exhibited a penchant "for translating needs, wishes and desires into highly impulsive emotional and behavioral expressions of a quite hysterical nature." Dr. Zagar recommended long-term psychotherapy, medication, speech and hearing therapy, special education placement in a psychiatric facility whether correctional, private or public. He stated that without such efforts, "[regardless] of whether he stops or continues drinking and abusing drugs, he will act out in a psychologically self-destructive and overtly dangerous way." He concluded that G.S. "exhibits four of the tetrade of symptoms of criminally violent family member, gang membership, alcohol and drug abuse plus severe learning difficulties, all [of] which seem to be clinically and to statistically predict homicide."
A letter from Dr. Lerwut Wongsarnpigoon, a psychiatrist, stated that G.S. was being treated on an outpatient basis with medication for major depression and mood swings. The doctor recommended rehospitalization because the present placement in the juvenile detention center was exacerbating G.S.'s psychiatric condition.
A June 1986 social history and assessment from Riveredge Hospital stated that G.S. had been involved in fights, associated with a gang, had a gun, had a chronic problem obeying curfew, and had "severe mood swings and engag[es] in physical attacks on the mother, in which he pushes, hits and kicks her." G.S. was frequently a truant and used drugs and alcohol regularly. His mother believed he might experience petit mal seizures. A July 1986 discharge summary from Riveredge stated that G.S. initially had been verbally abusive and *743 threatening to the staff, and was placed in restraints shortly after admission. He was again put in restraints following a visit from his mother.
The State recommended placement in the Department of Corrections, and defense counsel argued for probation with placement in a private psychiatric hospital. The court committed G.S. to the Department of Corrections and stated that it would write a letter strongly indicating that G.S. be given psychiatric care. The court specifically found that G.S. was beyond the control of his parents or guardian; that it would be in his best interest and the best interest of the community that he be made a ward of the court; and that he was a danger to himself and the community.
 1, 2 Under the Juvenile Court Act, the court may commit a delinquent to the Department of Corrections where less severe placement alternatives would not be in the best interest of the minor and the public, and the court may consider prior arrests, station adjustments, curfew violations and the social investigation. (Ill. Rev. Stat. 1985, ch. 37, pars. 705-1(1), 705-7, 705-10(1)(a).) Moreover, the disposition entered by a juvenile court judge rests within that court's discretion, and this court will not disturb that decision absent an abuse of discretion. In re T.M. (1984), 125 Ill. App.3d 859, 466 N.E.2d 1328.
 3 The court was given several alternatives for G.S.'s disposition. Defense counsel argued that G.S. should be placed in a private hospital for psychiatric evaluation and treatment. The court carefully considered this option, but rejected it for several reasons. The program was limited to 45 days. Also, the court had made repeated referrals to that particular hospital resulting in the premature release of the minors.
Of great significance here, however, is the nature of the crime committed. Two eyewitnesses watched G.S. repeatedly shoot at the victim and his companions as they tried to flee. Even after the victim fell to the ground, G.S. took aim and continued shooting. The shooting was apparently unprovoked and gang related. The gravity of the offense distinguishes this case from those relied upon by G.S. See, e.g., In re B.S. (1989), 192 Ill. App.3d 886.
Furthermore, Dr. Zagar expressly warned against releasing G.S. He opined that it was likely that G.S. would commit additional violent crimes, including homicide.
Given these sound reasons underlying the court's decision, we find no abuse of discretion.
G.S. points to his obvious need for psychiatric care. He refers to a *744 head injury at age four and other possible neurological problems. The trial court acknowledged G.S.'s needs. There was nothing presented, however, indicating G.S. would not receive adequate treatment through the Department of Corrections. The court stated it would write a letter to the Department of Corrections "indicating that he should get the type of psychiatric help he needs and let them place him in a psychiatric setting rather than the mother doing it privately." Moreover, the court was required to perform the difficult task of weighing G.S.'s needs against society's critical need to be protected from further acts of grave violence by G.S.
G.S. also maintains that the disposition violated his right to due process. There has been no evidence presented, however, that G.S. will be denied a right to psychiatric treatment at the Department of Corrections. Cf. Nelson v. Heyne (7th Cir.1974), 491 F.2d 352 (right to treatment includes right to minimum acceptable standards of care and treatment for juveniles).
For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.
Judgment affirmed.
LaPORTA, P.J., and EGAN, J., concur.