594 N.E.2d 410 (1992)
229 Ill. App.3d 764
171 Ill.Dec. 558
In re S.M., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
S.M., Respondent-Appellant).
No. 2-90-0949.
Appellate Court of Illinois, Second District.
June 5, 1992.
Rehearing Denied July 13, 1992.
*411 G. Joseph Weller, Deputy Defender, Sherry R. Silvern, Office of the State Appellate Defender, Elgin, for Linda Alvarado.
Dennis Schumacher, Ogle County State's Atty., William L. Browers and John X. Breslin, Deputy Directors, State's Attys. Appellate Prosecutors, Ottawa, for the People.
Presiding Justice INGLIS delivered the opinion of the court:
This is an appeal by S.M., a minor, after he was committed to the Department of Corrections, juvenile division, following his violation of certain conditions of his probation. The sole issue presented for review is whether the trial judge abused his discretion in revoking the minor's probation and committing him to the Department of Corrections (DOC). We reverse and remand.
We proceed with a chronological recitation of the facts. On November 10, 1987, the State filed a petition for an adjudication of wardship pursuant to section 5-13 of the Juvenile Court Act of 1987 (Act) (Ill.Rev. Stat.1987), ch. 37, par. 805-13) alleging that S.M., born in December 1974, was a delinquent minor in that he committed a burglary on October 21, 1987, in violation of section 19-1(a) of the Criminal Code of 1961 (Ill.Rev.Stat.1987, ch. 38, par. 19-1(a)). On December 12,1987, a supplemental petition was filed alleging S.M. was delinquent in that he committed a battery on November 8, 1987, in violation of section 12-3(a)(1) of the Criminal Code of 1961 (Ill.Rev.Stat. 1987, ch. 38, par. 12-3(a)(1)). On March 10, 1988, S.M. admitted the allegation in the original petition, and the court found the minor to be a delinquent pursuant to section 5-20 of the Act (Ill.Rev.Stat.1987, ch. 37, par. 805-20). The court allowed the State to dismiss the supplemental petition. Three months later, S.M. was made a ward of the court and put on probation until August 12, 1989, pursuant to sections 5-23(1)(a)(1) and 5-24 of the Act (Ill.Rev.Stat. 1987, ch. 37, pars. 805-23(1)(a)(1), 805-24). There were 10 conditions attached to S.M.'s probation, including that S.M. "is to attend school all day every day, unless home sick in bed, and obey school authorities."
On May 5, 1989, the State filed a petition to revoke S.M.'s probation pursuant to section 5-25 of the Act (Ill.Rev.Stat.1987, ch. 37, par. 805-25), alleging S.M. violated his probation on April 28, 1989, when he was suspended from Rochelle Junior High School for five days because of continuous behavioral problems. On July 6,1989, S.M. admitted the allegation in the petition to *412 revoke probation. The State recommended that S.M. be placed in Rosecrance for his substance abuse problem, then into Focus House. Both are treatment facilities for minors. The trial judge lectured the minor on how close he was to being sent to the DOC and then modified the probation, extending it to August 31, 1990. Two conditions were added to his probation: (1) that Donald King of the Ogle County probation office was named as guardian of the minor; and (2) that S.M. "abstain from the use of alcohol or chemicals unless prescribed by a physician."
A progress report was filed with the court on September 20, 1989, in which probation officer Susan Lehman wrote that S.M. was placed in Focus House on August 23, 1989. Lehman noted that a random urinalysis conducted on September 1, 1989, indicated that S.M. testified positive for marijuana. She cautioned, however, that this could have been attributed to his regular use of the drug before placement. She said that Focus House would continue to perform random urinalysis tests on S.M. In an attached letter to Lehman's report, Greg Martin, director of Focus House, stated that while S.M. did not seem "invested" in the program, he presented no major behavioral problems.
On October 25, 1989, a probation violation report was filed with the court, stating that S.M. had been drinking at home when his mother was not there. It was later discovered that S.M.'s mother, Linda Alvarado, was not at home on weekends during S.M.'s visits, resulting in S.M. being left unsupervised. The court issued an order of protection, ordering Ms. Alvarado to reside with and monitor S.M. on the weekends.
A second progress report was filed with the court on February 26, 1990. In that report, probation officer Diane Biggs wrote that S.M. was in treatment at Rosecrance until January 26, 1990. Biggs wrote that S.M. had told her that he wanted to quit using drugs and his affiliation with the Latin Kings gang. He reported that he was attending Alcoholics Anonymous (A.A.), Alateen and Sobriety meetings, and meetings with Greg Martin and Eileen Cole of Focus House. Ms. Alvarado told Biggs that S.M. was doing much better and that she was happy with his progress. Biggs wrote that S.M. had "made improvements regarding himself and his future" and gave him an "excellent" rating for progress.
At a court hearing on March 1, 1990, Ms. Biggs stated that S.M. was doing a "wonderful job"; that he was seen memorizing the steps associated with Narcotics Anonymous; that he had tried to get a friend to go to A.A. meetings; and that he was trying to get his brother to stop using drugs. The court stated that it was "very pleased" with S.M.'s progress.
On April 3, 1990, the State filed a petition to revoke S.M.'s probation, which was based on a probation violation report filed one day earlier. The petition alleged that: (1) S.M. did not return to Focus House on March 31 when he was told to do so; (2) he did not attend baseball practice the week of March 26; and (3) that he tested positive for marijuana on March 27. On April 19, S.M. denied the allegations in the petition. On May 31 and June 7, two more probation violation reports were filed with the court alleging that S.M. was blatantly disobeying authority figures at Rosecrance, that he was "throwing * * * gang signs," that he returned back to Rosecrance late on May 27, that he was discharged on May 29 because of behavior problems and that he failed to attend an AA meeting on June 4. On June 11 the State filed an amended petition to revoke probation, containing the above allegations.
On July 12, 1990, S.M. admitted some of the allegations in the State's petition. S.M. denied throwing gang signs and denied missing AA meetings, explaining that he was attending meetings in Rockford. The trial judge determined that S.M. was voluntarily admitting to certain parts of the amended petition and admonished S.M. as to the rights he would be waiving by the admission and the possible dispositions available.
The State offered the following factual basis for S.M.'s partial admission to the petition. S.M. was told on March 31 to *413 return to Focus House later that day but did not, nor did he tell staff members where he was. Furthermore, S.M. returned late to Rosecrance on May 27 after receiving a pass and, between May 27 and May 29, he argued with teachers at Rosecrance resulting in an unsuccessful discharge on May 29. The trial court accepted S.M.'s admission and scheduled a dispositional hearing for August 16.
On August 16, 1990, S.M. and his mother appeared for the dispositional hearing. S.M. testified in his own behalf, telling the trial judge that, contrary to the information in the third addendum to the social history, he had not driven his mother's car in June, that he had telephoned the probation department to inform it that he could not make an appointment on June 22, and that he was no longer involved in gangs. S.M. also told the court that he was working eight hours a day, five days a week, earning $5 hourly in a landscaping business. He stated that he had not used drugs for awhile, was going to try out for football and was doing "pretty good." On cross-examination, S.M. again denied driving his mother's car in June; however, his answer seemed to imply that he had driven the car at some point. S.M. also stated that he had not had any recent gang involvement, although he had spoken with one alleged gang member who was in treatment at Rosecrance.
In rebuttal, the prosecution presented the testimony of juvenile officer Debra Wilcox of the Rochelle police department. Wilcox stated that she had three reports over the summer concerning S.M. Two of the reports concerned S.M.'s alleged involvement in hitting or pushing another youngster. Wilcox told the court that S.M. approached her "on more than one occasion" to tell her he was no longer in the Latin Kings gang. However, Wilcox stated that she had seen S.M. in the company of people she knows to be "gang related." Wilcox admitted that she had not been able to investigate the three reports.
The trial judge, after hearing arguments from counsel, stated:
"And I'm very unhappy because you have great potential that you have thrown away. The only time you have followed the rules is when you have been in a structured setting, such as Focus House and Rosecrance, and even there[,] negative reports come out concerning your behavior, your course of conduct, your continuing course of conduct, of your behavior, which is unacceptable. And the resources that are available to us have been used, all of them, and the results have been so far negative.
Accordingly, I find that I have no other alternative but to commit you to the Department of Corrections."
S.M.'s mother interrupted the trial judge and asked if the cause could be continued so that she could hire an attorney to better represent S.M. The trial judge then continued speaking and admonished S.M. as to his rights to an appeal. S.M.'s mother then continued speaking, stating in essence that her son was doing well and that "he's going to be bad now." S.M. filed this timely appeal. We note that S.M.'s attorney and the State took eight months each to file their respective briefs in this case.
The only issue before this court is whether the trial judge abused his discretion in revoking S.M.'s probation and committing him to the DOC. The disposition of a minor rests within the sound discretion of the trial judge, and absent a showing of abuse, the trial court's determination will not be reversed by this court. In re Griffin (1982), 92 Ill.2d 48, 54, 64 Ill.Dec. 948, 440 N.E.2d 852; In re T.M. (1991), 210 Ill.App.3d 651, 657, 155 Ill.Dec. 348, 569 N.E.2d 529.
We initially review the relevant sections of the Act. Section 5-23 sets forth the various dispositional alternatives available to the trial judge as to a minor found delinquent under the Act (Ill.Rev.Stat.1989, ch. 37, par. 805-23), including commitment to DOC under section 5-33 of the Act (Ill. Rev.Stat.1989, ch. 37, par. 805-33). Section 5-23(1)(b) restricts the trial court's consideration of commitment to the DOC as a disposition to those cases where (1) the minor is 13 years of age or older, and (2) a *414 term of incarceration is permitted by law for adults found guilty of the offense for which the minor was adjudicated delinquent. (Ill.Rev.Stat.1989, ch. 37, par. 805-23(1)(b).) Here, S.M. was over the age of 13 and a term of imprisonment is permitted for adults found guilty of burglary. See Ill.Rev.Stat.1989, ch. 38, par. 19-1(b) (burglary is a Class 2 felony); Ill.Rev.Stat.1989, ch. 38, par. 1005-8-1(a)(5) (sentence of imprisonment for Class 2 felony shall be not less than three years and not more than seven years).
Additionally, section 5-33(1) sets forth certain findings the trial court must make prior to committing a delinquent minor to the DOC:
"When any delinquent has been adjudged a ward of the court under this Act, the court may commit him to the Department of Corrections, Juvenile Division, if it finds that (a) his parents, guardian or legal custodian are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and the best interests of the minor and the public will not be served by placement under Section 5-29 [(Ill.Rev.Stat.1989, ch. 37, par. 805-29)]; or (b) it is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent." (Ill.Rev.Stat.1989, ch. 37, par. 805-33(1).)
Although no Illinois law requires the use of least restrictive alternatives, commitment to the DOC should only be used when less severe alternatives would not be in the best interests of the minor and the public. In re G.S. (1990), 194 Ill.App.3d 740, 743, 141 Ill.Dec. 344, 551 N.E.2d 337; In re B.S. (1989), 192 Ill.App.3d 886, 891, 140 Ill.Dec. 44, 549 N.E.2d 695.
We find the judge's conclusion that he "had no other alternative but to commit [S.M.] to the Department of Corrections" to be an insufficient finding under section 5-33(1) (Ill.Rev.Stat.1989, ch. 37, par. 805-33(1)). While there is not a requirement that the trial judge repeat the actual words of section 5-33(1) when committing a minor to the DOC, the statute does require a finding by the trial judge that either (1) the minor's parents are unfit, unable or unwilling to care for him and that the best interests of the minor and the public would not be served by alternative placement under section 5-29 (Ill.Rev.Stat.1989, ch. 37, par. 805-29 (allowing placement with a relative, probation officer, an agency or training school)) or (2) incarceration is necessary to protect public safety. (Ill.Rev.Stat.1989, ch. 37, par. 805-33(1).) Under certain circumstances, a court of review can imply such findings based on the evidence in the record. (See, e.g., In re D.K. (1984), 125 Ill.App.3d 309, 311, 80 Ill.Dec. 342, 465 N.E.2d 133 (trial court's cursory statement committing minor to the DOC was supported by the record).) We have reviewed the record in this case and determine that we cannot imply the requisite section 5-33(1) findings necessary to commit S.M. to the DOC.
The judgment of the circuit court of Ogle County is therefore reversed, and the cause is remanded for further proceedings consistent with this opinion.
Reversed and remanded.
DUNN and BOWMAN, JJ., concur.